**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6047 |
| | ) | |
| SUBURBAN IRON WORKS, INC. and | ) | Honorable Elaine E. Bucklo |
| MARK J. HIVON, | ) | |
| Defendants. | ) | |

**MOTION FOR ENTRY OF JUDGMENT OF FORECLOSURE**

Plaintiff, FirstMerit Bank, N.A., by and through its attorney, Daniel I. Schlade of Arnstein & Lehr LLP, moves this court for entry of a Judgment of Foreclosure. In support thereof plaintiff states:

1.     Concurrent with the filing of this Motion, plaintiff has filed a Motion For Summary Judgment against all defendants. Upon entry of a summary judgment order against all defendants, plaintiff is entitled to a judgment of foreclosure as well.

2.     In further support of this Motion, plaintiff attaches and incorporates by reference its Affidavit of Proof, and its Affidavit of Attorney's Fees, attached hereto as Exhibits A and B.

2.     A draft copy of the Judgment of Foreclosure is attached hereto as Exhibit C.

WHEREFORE, plaintiff FirstMerit Bank, N.A. respectfully requests that this Court enter the Judgment of Foreclosure and Sale.

FIRSTMERIT BANK, N.A.

s/Daniel I. Schlade
One of its Attorneys

Daniel I. Schlade (ARDC No. 6273008)
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois  60606
(312) 876-7100

## <u>Certificate of Service</u>

      The undersigned, an attorney, upon oath, hereby certifies that he served a copy of the foregoing **Motion For Entry of Judgment of Foreclosure** upon all counsel of record, identified below, by causing a true and correct copy thereof to be delivered by electronically filing the document with the Clerk of Court using the ECF system on March 21, 2014.

Bert J. Zaczek
bert@bzlegal.net

James B. Zaczek
bert@bzlegal.net

s/Daniel I. Schlade_____
Attorney For Defendants

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6047 |
| | ) | |
| SUBURBAN IRON WORKS, INC. and | ) | Honorable Elaine E. Bucklo |
| MARK J. HIVON, | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF PROOF

I, Lucian Lupascu, declare under penalty of perjury, that the following is true and correct:

1.     I am currently employed by FirstMerit Bank, N.A. ("FirstMerit" or "lender") in the position of Vice President. FirstMerit is the lender for the loan at issue in the above captioned lawsuit. I am a duly authorized agent of FirstMerit; and I am duly authorized to make this affidavit on behalf of FirstMerit.

2.     In my capacity as an employee of FirstMerit, I am familiar with the bookkeeping for FirstMerit, the loan files and records maintained by FirstMerit, the amounts owed by the respective borrowers for loans granted, serviced, and/or acquired by FirstMerit, and the computer record-keeping systems maintained by FirstMerit. In addition, I am familiar with the inputting of information relating to loan collections and fees into FirstMerit's computer databases and programs. Thus, I am familiar with the business and mode of operations of FirstMerit and the management of loans granted by FirstMerit to various borrowers, including the borrowers at issue in the above captioned lawsuit.

3. The subject loan from to Suburban Iron Works, Inc. ("Suburban"), and guaranteed by Mark J. Hivon ("Hivon") is memorialized and set forth with more particularity in the following exhibits attached to the Complaint in the above captioned lawsuit, attached hereto as Exhibit 1 (the "Complaint"):

    a.    The Mortgage dated May 17, 2009, recorded June 24, 2009 as document number 6489843 With the Lake County, Illinois Recorder of Deeds (the "Mortgage")

    b.    The Business Loan Agreement and Promissory Note, dated September 9, 2009, in the principal amount of $1,000,000.00 (Colletively, the "Note"). *See* Exhibit 1-B. The Note is a restatement and replacement of prior notes dated July 15, 2009 and May 15, 2009;

    c.    The Commercial Guaranty executed by Hivon guarantying the debts of Suburban, including the debts secured by the Mortgage and Note (the "Guaranty"). *See* Exhibit 1-D.

Each of these documents are true and accurate copies of the originals.

4. I may collectively refer to the Mortgage, Note, and Guaranty as the "Loan" or the "Loan Documents."

5. The Mortgage was executed by Suburban; the Note was executed by Suburban; and the Guaranty was executed by Hivon.

6. I have reviewed all of the allegations and exhibits to the Complaint, and each and every allegation is true, except that the statement of default calculation in Paragraph 9(j) of the Complaint has increased since the filing of the Complaint. I have re-calculated the statement of default through February 25, 2014, and the correct calculation and itemization for the current statement of default is set forth below in Paragraph 12 of this Affidavit (excluding attorney's fees).

7. FirstMerit is the current title holder of the Mortgage, Note, and Guaranty. While the Loan was originated at Midwest Bank And Trust Company ("Midwest"); Midwest was

subsequently placed into receivership, and the Federal Deposit Insurance Corporation acquired and assigned the Mortgage, Note and Guaranty to FirstMerit. *See* Exhibit 1-C.

8.   I am familiar with the entry of data into FirstMerit's computer system as well as computer generated records based on the data entered into the system. FirstMerit manages its loans, including the subject Loan, using both Microsoft Excel ("Excel") and HOST software ("Host"). Excel is a general spreadsheet program, which is frequently used in the lending industry for loan calculations, and I am personally aware that numerous other lending institutions in the Cook County area use Excel to track, calculate and reconcile loan balances. Host is loan servicing software that is also used to track, calculate and reconcile loans, and I am personally aware that numerous other lending institutions in Illinois use Host to track and reconcile loan balances.

9.   The records which I have relied upon in calculating the figures in this affidavit consist of a payoff statement and loan balance, the loan file, as well as the loan documents identified in Paragraph 3.

10.   A true and accurate copy of the payoff statement is attached hereto as Exhibit 2. The payoff statement was prepared using both Excel and Host. The payoff statement itemizes all amounts owed under the Loan except attorney's fees and costs. *See* Exhibit 2. All of the figures and representations in the payoff statement are true and accurate.

11.   The Loan has been in default since at least September 7, 2010, the Loan maturity date, as a result of Suburban's failure to pay the outstanding balance due under the terms of the Loan. *See* Exhibit 1, ¶ 9(j). Additionally, Hivon is in breach of the Guaranty for failing to pay all amounts owed by Suburban pursuant to the Loan.

12.    FirstMerit has elected to claim the entire balance due under the terms of the Loan Documents, and there is now due and owing to FirstMerit by the Suburban and Hivon, jointly and severally, the following amounts for the Loan that is the subject of the above captioned lawsuit:

| | |
|---|---|
| Outstanding Principal: | $810,000.00 |
| Interest through 2/25/2014: | $244,301.33 |
| Late Charges: | $14,043.78 |
| Appraisals: | $5,040.00 |
| TOTAL: | $1,073,385.11 |

14.    Interest continues to accrue on the outstanding principal balance at the rate of $$224.999937 per diem at the rate of 10.00%. The above total statement of default does not include future accruing interest, attorney's fees or costs.

15.    I have personal knowledge of the facts set forth in this affidavit and can testify in accordance therewith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2014.

_____
Lucian Lupaseu

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6047 |
| | ) | |
| SUBURBAN IRON WORKS, INC. and | ) | Property Address: |
| MARK J. HIVON, | ) | 27W942 Industrial Ave. |
| Defendants. | ) | Barrington, Illinois 60010 |

**COMPLAINT TO FORECLOSE**
**MORTGAGE AND FOR OTHER AND FURTHER RELIEF**

Plaintiff, FirstMerit Bank, N.A., by and through its attorneys, Arnstein & Lehr LLP, for

its Complaint to Foreclose Mortgage And For Other Relief against Defendants Suburban Iron

Works, Inc. and Brant Terzic, states as follows:

**<u>Jurisdiction And Venue</u>**

1.     This court has federal diversity pursuant to 28 USC § 1332 and 28 USC § 1348

because the amount in controversy exceeds $75,000, and this controversy is between citizens of

different states.

**ANSWER:**

2.     Plaintiff FirstMerit Bank, N.A. ("FirstMerit"), for purposes of 28 USC § 1348, is

a citizen of Ohio, where it is headquartered and its main office is located.

**ANSWER:**

3.     Defendant Suburban Iron Works, Inc., is a citizen of Illinois, where it is

incorporated and where its principal place of business is located.

**ANSWER:**



4. Defendant Mark J. Hivon ("Hivon") is a citizen of Illinois because his primary residence is located in North Barrington, Illinois.

**ANSWER:**

5. The property that plaintiff is seeking to foreclose, commonly known as 27W942 Industrial Ave., Barrington, Illinois, is located in Barrington, Lake County, Illinois. Accordingly venue is proper in the Northern District of Illinois, Eastern Division.

**ANSWER:**

<u>**COUNT I – MORTGAGE FORECLOSURE**</u>

6. Plaintiff incorporates by reference paragraphs 1 through 5 as if set forth in full herein for paragraph 6.

**ANSWER:**

7. Plaintiff files this complaint to foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and joins the persons named in the case caption as "defendants", as parties hereto.

**ANSWER:**

8. Attached as Exhibit "A" is a true copy of the Mortgage. Attached as group Exhibit "B" is a true copy of the subject Business Loan Agreement and Promissory Note, including the allonge that transfers the Note to FirstMerit (the "Note"). Attached as Exhibit C are the assignments of the respective loan documents. Attached as Exhibit D is the guaranty executed by Hivon.

**ANSWER:**

9. Information concerning Mortgage:

  a. Nature of instrument: Mortgage

b.   Date of Mortgage: May 17, 2009

c.   Name of Mortgagor: Suburban Iron Works, Inc.

d.   Name of Mortgagee: Midwest Bank And Trust Company was the original mortgagee. FirstMerit Bank, N.A. is the current holder of the Mortgage and related loan documents by virtue of an assignment from the FDIC. *See* Exhibit C.

e.   Date and place of recording or registering: June 24, 2009 with the Recorder of Deeds of Lake County, Illinois

f.   Identification of Recording: Document No. 6489843

g.   Interest subject to Mortgage: Fee Simple

h.   Amount of original indebtedness, including subsequent advances made under the Mortgage: (1) original indebtedness: $2,000,000.00; (2) advances: -0-

i.   Legal Description of Mortgaged Real Estate and the Common Address or Other Information Sufficient to Identify with Reasonable Certainty:

THE EAST HALF OF LOT 8 IN LAKE BARRINGTON INDUSTRIAL SUBDIVISION, UNIT NO. 1, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 21, AND PART OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 43 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF, RECORDED DECEMBER 13, 1966, AS DOCUMENT 1324625, IN BOOK 44 OF PLATS, PAGE 15, AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED FEBRUARY 3, 1967, AS DOCUMENT 1328448, IN LAKE COUNTY, ILLINOIS.

Commonly known as: 27W942 Industrial Ave., Barrington, Illinois 60010

Tax Parcel Number:   13-22-301-003-0000

j.    Statement as to defaults:

The Note has been in default since at least September 7, 2010, due to the fact that the Note matured on said date, and defendant Suburban Iron Works, Inc. has failed to pay the outstanding principal balance, outstanding interest, and other costs. As of July 24, 2013, the statement of default, excluding attorney's fees and other costs/charges was: (1) Principal balance due on the Note of $810,000.00; (2) Interest due on the Note of $195,701.35; and (3) late charges of $11,602.55. Interest subsequent to July 24, 2013 continues to accrues on a per diem basis at the rate of $224.99.

Accordingly, the total statement of default as of July 24, 2013 is **$1,017,303.90,** excluding: accruing interest, attorney's fees, costs, and any allowable prepayment consideration.

k.    Name of present owners of said premises: Suburban Iron Works, Inc.

l.    Name of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

(1)    Mark J. Hivon

m.    Name of defendants claimed to be personally liable for a deficiency, if any: Suburban Iron Works, Inc. and Mark J. Hivon.

n.    Capacity in which Plaintiff brings this foreclosure. Plaintiff is the legal holder of the Mortgage and Note.

o.    Facts in support of redemption shorter than the longer of (i) 6 months from the date of the mortgage or, if more than one, all the mortgagors (I) have been served with summons or by publication or (II) have otherwise

submitted to the jurisdiction of the court, or (ii) 3 months from the entry of the judgment of foreclosure, if sought: Plaintiff makes no such request to do so at this time, but reserves the right to make such a request at a later date.

p.     Statement that the right of redemption has been waived by all owners of redemption, if applicable: Pursuant to the Mortgage, defendant mortgagor waives any and all rights of redemption pursuant to 735 ILCS 5/15-1601(b). *See* Exhibit A, p. 11.

q.     Facts in support of a request for attorneys' fees. The subject Mortgage and Note provides for payment of attorneys' fees, court costs, and expenses in the event of a default by the mortgagors. *See* Exhibit A, p. 9; *See also* Exhibit B, Promissory Note, p. 2.

r.     Facts in support of a request for appointment of a receiver: The mortgaged real estate is non-residential real estate and the plaintiff meets the requirements of 735 ILCS 5/15-1701 of the Illinois Mortgage Foreclosure Law for the appointment of a receiver.

s.     Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale, if sought: No allegation of an offer is made. However, Plaintiff alleges that it is not precluded from making or accepting such an offer by the filing of the instant foreclosure action.

t. Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof:

    (1) Suburban Iron Works, Inc.; and

    (2) Mark J. Hivon;

**ANSWER:**

WHEREFORE Plaintiff prays for the following relief:

a. A judgment of foreclosure of the Mortgage;

b. An order waiving the redemption period;

c. A personal judgment for a deficiency, if authorized by law;

d. An order placing the mortgagee in possession and appointing a receiver; and

e. Such other relief as equity may require.

## COUNT II – BREACH OF GUARANTY

10. Plaintiff incorporates by reference paragraphs 1 through 9 of Count I as if set forth in full herein for paragraph 10 of Count II.

**ANSWER:**

11. In connection with the Note, defendant Hivon executed a Commercial Guaranty (the "Guaranty"). A copy of the Guaranty is attached hereto as Exhibit D.

**ANSWER:**

12. The Guaranty is a valid and enforceable contract in that its terms were offered to Hivon; Hivon accepted those terms when he signed the Guaranty; and the Guaranty is supported by valuable consideration including all consideration under the Note.

**ANSWER:**

13. The Guaranty has since been assigned to plaintiff, and plaintiff is the title holder of the Guaranty and the Note. *See* Exhibit C.

**ANSWER:**

14. The borrower-defendant, Suburban Iron Works, Inc., did in fact receive the proceeds from the Note and subject loan.

**ANSWER:**

15. Defendant Suburban Iron Works, Inc. has defaulted under the terms of the Note by failing to pay outstanding principal and interest on the September 7, 2010 maturity date.

**ANSWER:**

16. Hivon has breached the Guaranty by failing to pay all sums owed by Suburban Iron Works, Inc.

**ANSWER:**

17. Plaintiff has been damaged by Hivon's breach of the Guaranty, itemized as follows through July 24, 2013: (1) Principal balance due on the Note of $810,000.00; (2) Interest due on the Note of $195,701.35; and (3) late charges of $11,602.55. Interest subsequent to July 24, 2013 continues to accrues on a per diem basis at the rate of $224.99. Accordingly, the total statement of default as of July 24, 2013 is $1,017,303.90, excluding: accruing interest, attorney's fees, costs, and any allowable prepayment consideration.

**ANSWER:**

WHEREFORE, plaintiff requests judgment in its favor and against defendant Mark J. Hivon, for $1,017,303.90, plus plaintiff's attorneys' fees, interest accrued subsequent to July 24, 2013, costs, and for any other relief deemed equitable and just by this Court.

FIRSTMERIT BANK, N.A.

By:   <u>s/Daniel I. Schlade</u>
       Attorney for the Plaintiff

Daniel I. Schlade (# 6273008)
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606-3913
(312) 876-7100

# EXHIBIT A

RECORDATION REQUESTED BY:
  MIDWEST BANK AND TRUST
  COMPANY
  Inverness Banking Center
  1604 West Colonial Parkway
  Inverness, IL 60067

WHEN RECORDED MAIL TO:
  MIDWEST BANK AND TRUST
  COMPANY
  Inverness Banking Center
  1604 West Colonial Parkway
  Inverness, IL 60067

SEND TAX NOTICES TO:
  MIDWEST BANK AND TRUST
  COMPANY
  Inverness Banking Center
  1604 West Colonial Parkway
  Inverness, IL 60067

Image# 044918370014 Type: MTG
Recorded: 06/24/2009 at 02:57:41 PM
Receipt#: 2009-00029889
Total Amt: $49.00 Page 1 of 14
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vandeventer Recorder
File **6489843**

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
  Prendergast/ Goebbert
  **MIDWEST BANK AND TRUST COMPANY**
  **1604 West Colonial Parkway**
  **Inverness, IL 60067**

## MORTGAGE

**MAXIMUM LIEN. At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $2,000,000.00.**

**THIS MORTGAGE** dated May 17, 2009, is made and executed between **Suburban Iron Works, Inc.**, whose address is 27W963 Industrial Avenue, North Barrington, IL 60010 (referred to below as "Grantor") and **MIDWEST BANK AND TRUST COMPANY** , whose address is **1604 West Colonial Parkway, Inverness, IL 60067** (referred to below as "Lender").

**GRANT OF MORTGAGE. For valuable consideration, Grantor** mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in **Lake County** County, State of Illinois:

  **See See Exhibit "A",** which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as **27942 W. Industrial Ave, Lake Barrington, IL 60010.** The Real Property tax identification number is 13-22-301-003.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by

(14)

Doc Number: 6489843 Page 1 of 14

Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**REVOLVING LINE OF CREDIT. This Mortgage secures the indebtedness including, without limitation, a revolving line of credit and shall secure not only the amount which Lender has presently advanced to Grantor under the Note, but also any future amounts which Lender may advance to Grantor under the Note within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage. The revolving line of credit obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Note and Related Documents.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only

and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this

# MORTGAGE
## (Continued)

**Mortgage:**

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of forty-five (45) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails

to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

## MORTGAGE

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after

# MORTGAGE
## (Continued)

receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**MORTGAGE**
**(Continued)**

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the

**MORTGAGE**

entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not

# MORTGAGE
## (Continued)

prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all indebtedness secured by this Mortgage.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Suburban Iron Works, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Suburban Iron Works, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

# MORTGAGE
## (Continued)

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note(s) or any of the Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which borrower is responsible under this Agreement or under any of the Related Documents; and includes without limitation all Loans, together with all other obligations, debts and liabilities of Borrower to Lender, of any and every kind and nature, as well as all claims by Lender against Borrower, relating to or arising from the transactions contemplated by this Agreement; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated whether arising by operation of law, under this Agreement or any of the Related Documents, or acquired by Lender from any other source; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as a guarantor, surety, or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means MIDWEST BANK AND TRUST COMPANY , its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated May 17, 2009, in the original principal amount of $2,000,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 3.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: in one payment of all outstanding principal plus all accrued unpaid interest on July 15, 2009. In addition, Grantor will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 17, 2009, with all subsequent interest payments to be due on the same day of each month after that. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Mortgage be less than 5.000% per annum or more than the maximum rate allowed by applicable law. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described

## MORTGAGE
### (Continued)

in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

SUBURBAN IRON WORKS, INC.

By: _____
    Mark J. Hivon, President of Suburban Iron Works, Inc.

---

### CORPORATE ACKNOWLEDGMENT

STATE OF _Illinois_      )
                      ) SS
COUNTY OF _DuPage_      )

On this _17th_ day of _May_, _2009_ before me, the undersigned Notary Public, personally appeared Mark J. Hivon, President of Suburban Iron Works, Inc. , and known to me to be an authorized agent of the corporation that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the corporation.

By _Deanna J Edwards_      Residing at _____

Notary Public in and for the State of _Illinois_

My commission expires _12/29/2011_

Official Seal
Deanna J Edwards
Notary Public State of Illinois
My Commission Expires 12/29/2011

---

LASER PRO Lending, Ver. 5.44.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  - IL  P:\PROSUITE\CFI\LPL\G03.FC  TR-25761  PR-51

# EXHIBIT 'A'

D   LEGAL DESCRIPTION:

THE EAST HALF OF LOT 8 IN LAKE BARRINGTON INDUSTRIAL SUBDIVISION, UNIT NO. 1, BEING
A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION
21, AND PART OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 22,
TOWNSHIP 43 NORTH, RANGE 9, EAST OT THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE
PLAT THEREOF, RECORDED DECEMBER 13, 1966, AS DOCUMENT 1324625, IN BOOK 44 OF
PLATS, PAGE 15, AS AMENDED BY CERTIFICATE OF  CORRECTION RECORDED FEBRUARY 3, 1967,
AS DOCUMENT 1328448, IN LAKE COUNTY, ILLINOIS.

PERMANENT INDEX NUMBER: *13-22-301-003-0000*

BORROWER'S NAME: *SUBURBAN IRON WORKS*

# EXHIBIT B

# BUSINESS LOAN AGREEMENT (ASSET BASED)

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,000,000.00 | 09-12-2009 | 09-07-2010 | 702338500001 | 1A2 / 308 | S206075 | 116 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Suburban Iron Works, Inc.
27 W963 Industrial Avenue
North Barrington, IL 60010

**Lender:** MIDWEST BANK AND TRUST COMPANY
Inverness Banking Center
1604 West Colonial Parkway
Inverness, IL 60067

---

THIS BUSINESS LOAN AGREEMENT (ASSET BASED) dated September 12, 2009, is made and executed between Suburban Iron Works, Inc. ("Borrower") and MIDWEST BANK AND TRUST COMPANY ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of September 12, 2009, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**LINE OF CREDIT.** Lender agrees to make Advances to Borrower from time to time from the date of this Agreement to the Expiration Date, provided the aggregate amount of such Advances outstanding at any time does not exceed the Borrowing Base. Within the foregoing limits, Borrower may borrow, partially or wholly prepay, and reborrow under this Agreement as follows:

**Conditions Precedent to Each Advance.** Lender's obligation to make any Advance to or for the account of Borrower under this Agreement is subject to the following conditions precedent, with all documents, instruments, opinions, reports, and other items required under this Agreement to be in form and substance satisfactory to Lender:

(1) Lender shall have received evidence that this Agreement and all Related Documents have been duly authorized, executed, and delivered by Borrower to Lender.

(2) Lender shall have received such opinions of counsel, supplemental opinions, and documents as Lender may request.

(3) The security interests in the Collateral shall have been duly authorized, created, and perfected with first lien priority and shall be in full force and effect.

(4) All guaranties required by Lender for the credit facility(ies) shall have been executed by each Guarantor, delivered to Lender, and be in full force and effect.

(5) Lender, at its option and for its sole benefit, shall have conducted an audit of Borrower's Accounts, books, records, and operations, and Lender shall be satisfied as to their condition.

(6) Borrower shall have paid to Lender all fees, costs, and expenses specified in this Agreement and the Related Documents as are then due and payable.

(7) There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement, and Borrower shall have delivered to Lender the compliance certificate called for in the paragraph below titled "Compliance Certificate."

**Making Loan Advances.** Advances under this credit facility, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by authorized persons. Lender may, but need not, require that all oral requests be confirmed in writing. Each Advance shall be conclusively deemed to have been made at the request of and for the benefit of Borrower (1) when credited to any deposit account of Borrower maintained with Lender or (2) when advanced in accordance with the instructions of an authorized person. Lender, at its option, may set a cutoff time, after which all requests for Advances will be treated as having been requested on the next succeeding Business Day.

**Mandatory Loan Repayments.** If at any time the aggregate principal amount of the outstanding Advances shall exceed the applicable Borrowing Base, Borrower, immediately upon written or oral notice from Lender, shall pay to Lender an amount equal to the difference between the outstanding principal balance of the Advances and the Borrowing Base. On the Expiration Date, Borrower shall pay to Lender in full the aggregate unpaid principal amount of all Advances then outstanding and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, not yet paid.

**Loan Account.** Lender shall maintain on its books a record of account in which Lender shall make entries for each Advance and such other debits and credits as shall be appropriate in connection with the credit facility. Lender shall provide Borrower with periodic statements of Borrower's account, which statements shall be considered to be correct and conclusively binding on Borrower unless Borrower notifies Lender to the contrary within thirty (30) days after Borrower's receipt of any such statement which Borrower deems to be incorrect.

**COLLATERAL.** To secure payment of the Primary Credit Facility and performance of all other Loans, obligations and duties owed by Borrower to Lender, Borrower (and others, if required) shall grant to Lender Security Interests in such property and assets as Lender may require. Lender's Security Interests in the Collateral shall be continuing liens and shall include the proceeds and products of the Collateral, including without limitation the proceeds of any insurance. With respect to the Collateral, Borrower agrees and represents and warrants to Lender:

**Perfection of Security Interests.** Borrower agrees to execute all documents perfecting Lender's Security Interest and to take whatever actions are requested by Lender to perfect and continue Lender's Security Interests in the Collateral. Upon request of Lender, Borrower will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Borrower will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. Contemporaneous with the execution of this Agreement, Borrower will execute one or more UCC financing statements and any similar statements as may be required by applicable law, and Lender will file such financing statements and all such similar statements in the appropriate location or locations. Borrower hereby appoints Lender as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue any Security Interest. Lender may at any time, and without further authorization from Borrower, file a carbon, photograph, facsimile, or other reproduction of any financing statement for use as a financing statement. Borrower will reimburse Lender for all expenses for the perfection, termination, and the continuation of the perfection of Lender's security interest in the Collateral. Borrower promptly will notify Lender before any change in Borrower's name including any change to the assumed business names of Borrower. Borrower also promptly will notify Lender before any change in Borrower's Social Security Number or Employer Identification Number. Borrower further agrees to

notify Lender in writing prior to any change in address or location of Borrower's principal governance office or should Borrower merge or consolidate with any other entity.

**Collateral Records.** Borrower does now, and at all times hereafter shall, keep correct and accurate records of the Collateral, all of which records shall be available to Lender or Lender's representative upon demand for inspection and copying at any reasonable time. With respect to the Accounts, Borrower agrees to keep and maintain such records as Lender may require, including without limitation information concerning Eligible Accounts and Account balances and agings. Records related to Accounts (Receivables) are or will be located at . The above is an accurate and complete list of all locations at which Borrower keeps or maintains business records concerning Borrower's collateral.

**Collateral Schedules.** Concurrently with the execution and delivery of this Agreement, Borrower shall execute and deliver to Lender schedules of Accounts and schedules of Eligible Accounts in form and substance satisfactory to the Lender. Thereafter supplemental schedules shall be delivered according to the following schedule:

**Representations and Warranties Concerning Accounts.** With respect to the Accounts, Borrower represents and warrants to Lender: (1) Each Account represented by Borrower to be an Eligible Account for purposes of this Agreement conforms to the requirements of the definition of an Eligible Account; (2) All Account information listed on schedules delivered to Lender will be true and correct, subject to immaterial variance; and (3) Lender, its assigns, or agents shall have the right at any time and at Borrower's expense to inspect, examine, and audit Borrower's records and to confirm with Account Debtors the accuracy of such Accounts.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the Initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Fees and Expenses Under This Agreement.** Borrower shall have paid to Lender all fees, costs, and expenses specified in this Agreement and the Related Documents as are then due and payable.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Illinois. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 27 W963 Industrial Avenue, North Barrington, IL 60010. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the

Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Interim Statements.** As soon as available, but in no event later than 45 days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

**Additional Requirements.** Borrower warrants and covenants with Lender that Borrower shall provide quarterly accounts receivable aging reports to Lender as soon as available but in no event later than 45 days after the end of each quarter.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Minimum Income and Cash flow Requirements.** Borrower shall comply with the following cash flow ratio requirements:

**Debt Service Coverage Ratio.** Maintain a ratio of Debt Service Coverage in excess of 1.200 to 1.000. The ratio "Debt Service Coverage" is defined as Borrower's earnings before interest, taxes, depreciation and amortization divided by Borrower's total required debt service as such amounts appear on a balance sheet in accordance with GAAP. This coverage ratio will be evaluated as of semi-annually.

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least forty-five (45) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (3) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Mark J. Hivon | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy;

or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Additional Financial Restrictions.** There shall be no changes in ownership of Borrower without written consent of Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**REQUIRED DEPOSIT RELATIONSHIP.** Borrower covenants and agrees with Lender that until all obligations of Borrower to Lender are paid and satisfied in full, and Lender's obligation to make advances hereunder has terminated, Borrower will maintain its principal operating, depository and savings accounts with Lender and will not utilize any other financial institution for any of its principal operating, depository or savings accounts.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interest may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Account.** The word "Account" means a trade account, account receivable, other receivable, or other right to payment for goods sold or services rendered owing to Borrower (or to a third party grantor acceptable to Lender).

**Account Debtor.** The words "Account Debtor" mean the person or entity obligated upon an Account.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement (Asset Based), as this Business Loan Agreement (Asset Based) may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement (Asset Based) from time to time.

**Borrower.** The word "Borrower" means Suburban Iron Works, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Borrowing Base.** The words "Borrowing Base" mean, as determined by Lender from time to time, the lesser of (1) $1,000,000.00 or (2) 80.000% of the aggregate amount of Eligible Accounts (not to exceed in corresponding Loan amount based on Eligible Accounts $1,000,000.00).

**Business Day.** The words "Business Day" mean a day on which commercial banks are open in the State of Illinois.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise. The word Collateral also includes without limitation all collateral described in the Collateral section of this Agreement.

**Eligible Accounts.** The words "Eligible Accounts" mean at any time, all of Borrower's Accounts which contain selling terms and conditions acceptable to Lender. The net amount of any Eligible Account against which Borrower may borrow shall exclude all returns, discounts, credits, and offsets of any nature. Unless otherwise agreed to by Lender in writing, Eligible Accounts do not include:

(1) Accounts with respect to which the Account Debtor is employee or agent of Borrower.

(2) Accounts with respect to which the Account Debtor is a subsidiary of, or affiliated with Borrower or its shareholders, officers, or directors.

(3) Accounts with respect to which goods are placed on consignment, guaranteed sale, or other terms by reason of which the payment by the Account Debtor may be conditional.

(4) Accounts with respect to which the Account Debtor is not a resident of the United States, except to the extent such Accounts are supported by insurance, bonds or other assurances satisfactory to Lender.

(5) Accounts with respect to which Borrower is or may become liable to the Account Debtor for goods sold or services rendered by the Account Debtor to Borrower.

(6) Accounts which are subject to dispute, counterclaim, or setoff.

(7) Accounts with respect to which the goods have not been shipped or delivered, or the services have not been rendered, to the Account Debtor.

(8) Accounts with respect to which Lender, in its sole discretion, deems the creditworthiness or financial condition of the Account Debtor to be unsatisfactory.

(9) Accounts of any Account Debtor who has filed or has had filed against it a petition in bankruptcy or an application for relief under any provision of any state or federal bankruptcy, insolvency, or debtor-in-relief acts; or who has had appointed a trustee, custodian, or receiver for the assets of such Account Debtor; or who has made an assignment for the benefit of creditors or has become insolvent or fails generally to pay its debts (including its payrolls) as such debts become due.

(10) Accounts which have not been paid in full within 90 days from the invoice date. The entire balance of any Account of any single Account Debtor will be ineligible whenever the portion of the Account which has not been paid within 90 days from the invoice date is in excess of 25.000% of the total amount outstanding on the Account.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Expiration Date.** The words "Expiration Date" mean the date of termination of Lender's commitment to lend under this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note(s) or any of the Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents; and includes without limitation all Loans, together with all other obligations, debts and liabilities of Borrower to Lender, of any and every kind and nature, as well as all claims by Lender against Borrower, relating to or arising from the transactions contemplated by this Agreement; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated whether arising by operation of law, under this Agreement or any of the Related Documents, or acquired by Lender from any other source; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as a guarantor, surety, or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means MIDWEST BANK AND TRUST COMPANY , its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means and includes without limitation, Borrower's Promissory Note or Notes, if any, evidencing Borrower's loan obligations in favor of Lender, as well as any substitute, replacement, or refinancing note or notes thereof.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Primary Credit Facility.** The words "Primary Credit Facility" mean the credit facility described in the Line of Credit section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT (ASSET BASED) AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT (ASSET BASED) IS DATED SEPTEMBER 12, 2009.

BORROWER:

SUBURBAN IRON WORKS, INC.

By: _____
    Mark J. Hiven, President of Suburban Iron Works, Inc.

LENDER:

MIDWEST BANK AND TRUST COMPANY

By: _____
    Authorized Signer

# PROMISSORY NOTE



| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 09-12-2009 | 09-07-2010 | 702338500001 | 1A2 / 308 | S206075 | 116 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Suburban Iron Works, Inc.
27 W963 Industrial Avenue
North Barrington, IL  60010

**Lender:**  MIDWEST BANK AND TRUST COMPANY
Inverness Banking Center
1604 West Colonial Parkway
Inverness, IL  60067

---

**Principal Amount: $1,000,000.00**   **Date of Note:  September 12, 2009**

**PROMISE TO PAY.** Suburban Iron Works, Inc. ("Borrower") promises to pay to MIDWEST BANK AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 7, 2010.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 7, 2009, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied to interest, Principal, Escrow, Late Charges and Miscellaneous Fees..  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the Midwest Bank and Trust Company Corporate Rate (the "Index").  The index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion.  If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate equal to the Index.  NOTICE:  Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  MIDWEST BANK AND TRUST COMPANY , Attention: Loan Operations Department, 501 WEST NORTH AVENUE MELROSE PARK, IL  60160-1603.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 5.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness



evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by all business assets as more specifically described in a Commercial Security Agreement dated April 30, 2005 from Borrower to Lender, and a Mortgage dated May 17, 2009 from Borrower to Lender on real property located in Lake County, State of Illinois as may be subsequently modified, and other such documents, instruments and/or agreements securing this Note as issued from time to time.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**ADDITIONAL TERMS AND CONDITIONS.** See Business Loan Agreement (Asset Based) dated September 12, 2009 between Borrower and Lender, as the same may be amended, modified, or restated from time to time.

**PRIOR NOTE.** This Note is a restatement of the indebtedness evidenced by, and is a replacement and consolidation of the $1,000,000.00 Promissory Note of Borrower dated July 15, 2009 payable to the order of Lender (principal balance of $620,000.00 as of the date hereof) as may be amended from time to time and nothing contained herein shall be construed: (i) to deem paid or forgiven the unpaid principal amount of, or unpaid accrued interest on, said Promissory Note outstanding at the time of its replacement by this Note; or (ii) to release, cancel, terminate or otherwise adversely affect all or any part of any lien, mortgage, deed of trust, assignment, security interest or other encumbrance heretofore granted or for the benefit of the payee of said Promissory Note which has not otherwise been expressly released.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral,



# PROMISSORY NOTE
## (Continued)

Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

SUBURBAN IRON WORKS, INC.

By: _____
    Mark J. Hivon, President of Suburban Iron Works,
    Inc.

LASER PRO Lending, Ver. 5.48.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - IL F:\PROSUITE\CFI\LPL\D20.FC TR-36028 PR-51

## ALLONGE

This Allonge ("Agreement") dated as of August 19, 2013, is executed by the Federal Deposit Insurance Corporation as receiver of Midwest Bank and Trust Company ("FDIC") to and for the benefit of FirstMerit Bank, N.A. as assignee of the Federal Deposit Insurance Corporation, as receiver of Midwest Bank and Trust Company (the "Lender").

WITNESSETH:

WHEREAS, Suburban Iron Works, Inc. (the "Borrower") made and delivered to Midwest Bank and Trust Company, as predecessor to the FDIC a Promissory Note dated as of September 12, 2009 in the principal sum of $1,000,000.00 (the "Note"); and

WHEREAS, the FDIC wishes to endorse the Note to Lender.

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the FDIC agrees as follows:

1.     The FDIC hereby endorses and assigns the Note to Lender. This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver. All references in the Note to "Lender" shall mean and include FirstMerit Bank, N.A.. Capitalized terms referenced in this "Agreement" which are not otherwise defined shall have the same meaning herein as in the Loan Agreement.

2.     This Agreement is made and entered and delivered in Chicago, Illinois and Illinois law shall control the interpretation thereof.

3.     This Agreement shall inure to the benefit of the Lender and its successors and assigns. This Agreement shall be binding upon the FDIC and its successors and assigns.

IN WITNESS WHEREOF, the FDIC has executed this Agreement as of the date first above written.

Pay to the order of

FirstMerit Bank, N.A.
Without Recourse

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Midwest Bank
and Trust Company

By: _Thomas R. Maxwell_
Name: _THOMAS R. MAXWELL_
Title: Attorney-in Fact

# EXHIBIT C

This Instrument Prepared By and After
Recording Should Be Returned to:
Arnstein & Lehr LLP
120 S. Riverside Plaza
Suite 1200
Chicago, Illinois 60606
Attn: Daniel I. Schlade

## ASSIGNMENT OF LOAN DOCUMENTS

For Value Received, the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company (herein "Assignor"), does hereby grant, sell, assign, transfer and convey, unto FirstMerit Bank, N.A., a corporation organized and existing under the laws of the United States ("Assignee"), all of Assignor's rights, title and beneficial interests in, to and under the loan documents set forth below together with all documents evidencing or securing the loans relating to such loan documents and all rights accrued or to accrue under such documents. TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of such documents.

1.      That certain Business Loan Agreement made and executed by Suburban Iron Works, Inc. in favor of Midwest Bank and Trust Company, f/k/a Mount Prospect National Bank, dated September 12, 2009, for Loan No. 702338500001;

2.      That certain Commercial Guaranty made and executed by Mark J. Hivon in favor of Midwest Bank and Trust Company, f/k/a Mount Prospect National Bank, dated May 31, 2007, guarantying the debts of Suburban Iron Work, Inc.;

3.      That certain Mortgage made and executed by Suburban Iron Works, Inc. in favor of Midwest Bank and Trust Company, f/k/a Mount Prospect National Bank, dated May 17, 2009 and recorded on June 24, 2009 as Document No 6489843 in the Official Records of Cook County, State of Illinois; and

The foregoing loan documents encumber the real property described on Exhibit A annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

**[Remainder of Page Intentionally Left Blank; Signature Page(s) Follow]**

11122669.1

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment on August 19, 2013.

FirstMerit Bank, N.A., attorney in fact for the Federal Deposit Insurance Corporation, receiver for Midwest Bank and Trust Company

By: _Thomas R. Maxwell_

Name: Thomas R. Maxwell
Title: Sr. Vice President

County of _DuPage_ )
State of _Illinois_ )

Before me, A Notary Public in and for said county, personally appeared the above named, Thomas R. Maxwell, known to me to be the Sr. Vice President of FirstMerit Bank, N.A. and acknowledged that he, as such Officer did hereunto subscribe the name of said bank, and that the same is his free act and deed, and the free act and deed of the bank.

IN TESTIMONY WHEREOF, I hereunto set my hand and official seal, at _____, this __ day of _August_, 2013.

_Patricia Malloy-Butler_
Notary Public

My Commission Expires:_____

OFFICIAL SEAL
PATRICIA MALLOY-BUTLER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/06/2016

11122669.1

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE EAST HALF OF LOT 8 IN LAKE BARRINGTON INDUSTRIAL SUBDIVISION, UNIT NO. 1, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 21, AND PART OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 43 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF, RECORDED DECEMBER 13, 1966, AS DOCUMENT 1324625, IN BOOK 44 OF PLATS, PAGE 15, AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED FEBRUARY 3, 1967, AS DOCUMENT 1328448, IN LAKE COUNTY, ILLINOIS.

Commonly known as: 27W942 Industrial Ave., Barrington, Illinois 60010

Tax Parcel Number:          13-22-301-003

Image# 047275720002 Type: ASG
Recorded: 02/14/2011 at 09:44:30 AM
Receipt#: 2011-00009128
Page 1 of 2
Fees: $39.00
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6706019

## ASSIGNMENT OF MORTGAGE

For Value Received, the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company, (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto FirstMerit Bank, N.A., a corporation organized and existing under the laws of the United States ("Assignee"), all of Assignor's rights, title and beneficial interests in, to and under that certain Mortgage dated 5/17/2009 and recorded on 6/24/2009, made and executed by **Suburban Iron works INC** in favor of Midwest Bank and Trust Company fka , which Mortgage is of record as Document No 6489843, of the Official Records of **Lake** County, State of Illinois, encumbering the real property described on Exhibit A annexed hereto and made a part hereof, together with the buildings and improvements erected thereon, together with all documents evidencing or securing the loan relating to the Mortgage and all rights accrued or to accrue under the Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 2/2/2011.

FirstMerit Bank, N. A., attorney in fact for the Federal Deposit Insurance Corporation, receiver for Midwest Bank and Trust Company

By: _____
Name: Marcia Liuzzo
Title: Vice President

County of Stark        )
State of Ohio           )

BEFORE me, a Notary Public in and  for  said county, personally  appeared the above  named, Marcia Liuzzo known to me to be the Vice President of FirstMerit Bank, NA and acknowledged that he, as such Officer did hereunto subscribe the name of said Corporation, and that the same is his free act and deed, and the free act and deed of the Corporation.

IN TESTIMONY WHEREOF, I hereunto set my hand and official seal, at Canton, Ohio, this 4 day of Feb , 2011.

RITA BERLIN, NOTARY    Notary Public   Rita Berlin
STATE OF OHIO          Commission Expires 03/06/2012
MY COMMISSION EXPIRES: 03/06/12

PREPARED BY: FirstMerit Bank, NA
and Mail to:      III Cascade Plaza
                  Akron, Ohio 44308

# 702338500001

D.   LEGAL DESCRIPTION:

THE EAST HALF OF LOT 8 IN LAKE BARRINGTON INDUSTRIAL SUBDIVISION, UNIT NO. 1, BEING
A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION
21, AND PART OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 22,
TOWNSHIP 43 NORTH, RANGE 9, EAST OT THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE
PLAT THEREOF, RECORDED DECEMBER 13, 1966, AS DOCUMENT 1324625, IN BOOK 44 OF
PLATS, PAGE 15, AS AMENDED BY CERTIFICATE OF  CORRECTION RECORDED FEBRUARY 3, 1967,
AS DOCUMENT 1328448, IN LAKE COUNTY, ILLINOIS.

27942 W. Industrial Ave.
Lake Barrington, IL 60010

PERMANENT INDEX NUMBER: *13-22-301-003-0000*

BORROWER'S NAME: *SUBURBAN IRON WORKS*

# EXHIBIT D

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 400 / 030 | | 116 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Suburban Iron Works, Inc.
27W963 Industrial Avenue
Barrington, IL 60010

**Lender:** MIDWEST BANK AND TRUST COMPANY
Inverness Banking Center
1604 West Colonial Parkway
Inverness, IL 60067

**Guarantor:** Mark J. Hivon
239 Indian Trail Road
North Barrington, IL 60010

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) effect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Additional Requirements.** Guarantor covenants and agrees that, while this Guaranty is in effect, Guarantor will provide to Lender an updated personal financial statement, as soon as available but in no event later than 90 days after each calendar year.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and

signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of provisions of this Guaranty are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender at the address as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**THE FOLLOWING NOTICE IS REQUIRED BY ILLINOIS LAW:** Unless Guarantor provides Lender with evidence of the insurance coverage required by Guarantor's agreement with Lender, Lender may purchase insurance at Guarantor's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Guarantor's interests. The coverage that Lender purchases may not pay any claim that Guarantor makes or any claim that is made against Guarantor in connection with the collateral. Guarantor may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Guarantor has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Guarantor will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Guarantor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Guarantor may be able to obtain on Guarantor's own.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Suburban Iron Works, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Mark J. Hivon, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means MIDWEST BANK AND TRUST COMPANY , its successors and assigns.

**Note.** The word "Note" means and includes without limitation, Borrower's Promissory Note or Notes, if any, evidencing Borrower's loan obligations in favor of Lender, as well as any substitute, replacement, or refinancing note or notes thereof.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 31, 2007.**

**GUARANTOR:**

X _____
Mark J. Hivon

LASER PRO Lending, Ver. 5.39.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - IL  n:\PRO\LATTIC\CFI\LPL\E30.FC  TR-10345  PR-51



**FIRSTMERIT.**
Bank

## COMMERCIAL LOAN PAYOFF STATEMENT

DATE: 2/27/2014

TO: Mark J. Hivon
Suburban Iron Works Inc.
27 W 963 Industrial Avenue
Barrington, IL 60010

RE: **Borrowers Name:** SUBURBAN IRON WORKS INC
**Loan Number:** 5427815 3472

The undersigned, [Lender], has been advised by **Mark J. Hivon** ("Guarantor") that Borrower intends to repay the total indebtedness of Borrower to Lender arising under promissory note dated **January 26, 2004** in the maximum principal amount of **$1,000,000.00**, as amended, supplemented, or otherwise modified from time to time and together with all other instruments and documents executed or delivered in connection with the transactions contemplated thereby (collectively, the "Lender Loan Documents").

The total aggregate principal balance and accrued interest, fees and expenses, if any, due to Lender from Borrower under the Lender Loan Documents, if paid on **February 28, 2014** (the "Payoff Date") by receipt of wire transfer of fully collected funds prior to 4:00 p.m., Chicago, Illinois time, pursuant to the wire instructions set forth below, is as follows:

| | | |
|---|---|---|
| PRINCIPAL BALANCE THROUGH THE PAYOFF DATE: | $ | 810,000.00 |
| INTEREST ACCRUED TO THE PAYOFF DATE OF **FEBRUARY 28, 2014**: | $ | 244,976.33 |
| FEES AND OTHER ITEMS OWED THROUGH THE PAYOFF DATE: | | |
| LATE FEE(S): $ | | 14,043.78 |
| APPRAISAL FEE(S): $ | | 5,040.00 |

| | | |
|---|---|---|
| **TOTAL (SUBJECT TO ADJUSTMENT AS PROVIDED BELOW FOR THE INTEREST PER DIEM THE "PAYOFF AMOUNT"):** | $ | 1,074,060.11 |

| | | |
|---|---|---|
| **INTEREST PER DIEM AS OF <u>FEBRUARY 27, 2014</u>** | $ | 225.00 |

THIS PAYOFF LETTER SHALL EXPIRE BY ITS TERMS ON <u>MARCH 5, 2014</u> AT 5:00 P.M.

LENDER'S INSTRUCTIONS FOR PAYOFFS:



EXHIBIT

2

**Wire Instructions:**

| | | **For overnight delivery of payoff to:** |
|---|---|---|
| Wire to: | FirstMerit Bank, N.A. | FirstMerit Bank, N.A. |
| ABA No.: | 041200555 | 501 W. North Avenue |
| Account No: | 121982 | Melrose Park, IL 60160 |
| Customer Loan No: | 5427815 3472 | Attention: Lucian Lupascu |
| Customer Name.: | SUBURBAN IRON WORKS INC | |
| Contact Name: | Lucian Lupascu | |
| Contact Phone: | (708) 498-2586 | |

If the Payoff Amount is not received by 4:00 p.m. (Chicago, Illinois time) on **February 28, 2014** the Interest Per Diem set forth above will be added to the Payoff Amount for each day. The revised figures shall be deemed to be the Payoff Amount and shall not otherwise amend or modify any provision of this letter. **FirstMerit Bank reserves the right to adjust this payoff quotation in the event of an error.**

In consideration of the payment by wire transfer as specified in the preceding paragraph, whether on the Payoff Date or after the Payoff Date, Lender hereby acknowledges and agrees that, upon receipt of an executed counterpart of this letter from the Borrower and the receipt of the Payoff Amount as set forth above and without the need of any further notice, (i) all commitments of Lender to extend credit to or for the account of the Borrower under the Lender Loan Documents shall terminate (and thereafter the Borrower shall have no right to obtain credit from Lender thereunder), (ii) all security interests and liens which Borrower has granted to Lender in any or all of Borrower's assets will be automatically and irrevocably released, (iii) all stock pledges or similar agreements of any guarantor of Borrower's obligations shall be terminated, (iv) Borrower, or its agents, attorneys and designees shall be immediately entitled to prepare and file and/or record all UCC-3 termination statements and other releases to record the forgoing release, including without limitation UCC-3 termination statements terminating the UCC financing statements listed on Exhibit A hereto, and (v) Lender will deliver to Borrower or its designee all stock certificates or other possessory collateral of Borrower held by Lender. Upon the request of the Borrower at any time after the effectiveness of the releases and terminations described above, and at the Borrower's sole cost and expense, Lender will execute (to the extent necessary) and deliver all documents and instruments reasonably required, and take such other actions as the Borrower may reasonably request, to evidence or record such releases and terminations.

Nothing contained herein terminates, releases or extinguishes (i) any indemnity obligations of Borrower set forth in the Lender Loan Documents; or (ii) any liability or obligation of Borrower with respect to or relating to any depository relationship with the Lender, including rights of setoff. The Borrower understands that Lender may not have yet received full and final credit on checks, drafts, transfers or other similar items (collectively, "Items") that have been received by Lender from the Borrower or its account debtors and provisionally credited by Lender to the Borrower's loan account, and thus Lender may be obligated to make payments ("Payments") to another depository bank in connection therewith. The Borrower hereby agrees, notwithstanding the termination of the applicable loan documents or any other provision hereof to the contrary, to be liable for and indemnify Lender and hold Lender harmless against all losses, costs and liabilities which Lender may incur as a result of any non-payment, protest, dishonor, charge back, claim, debit or refund of any Items, or the making of any Payments, together with any bank charges or other costs and fees incident thereto. The amount of any such losses, costs, or liabilities shall be paid to Lender promptly upon Lender's demand therefor, and Lender's determination of the amount thereof shall be conclusive absent manifest error.

Effective immediately upon payment of the Payoff Amount (and without any further action), the Borrower, on behalf of itself and each of its subsidiaries, releases and forever discharges Lender and its affiliates and the respective agents, employees, officers, directors, shareholders, attorneys, predecessors, successors and assigns of any of the foregoing (collectively the "Released Parties") from any claim, demand or cause of action to which the Borrower or any of its subsidiaries now has or at any time in the future may have against any Released Party arising out of or otherwise related to the financing transactions between the Borrower and Lender.

The Borrower acknowledges that the Pay-off Amount includes estimated legal fees and charges of Lender's legal counsel in connection with the payoff contemplated herein. The Borrower agrees that if the actual fees and charges of Lender's legal counsel exceed the estimated amount, then the Borrower will pay such excess promptly upon receipt of an invoice therefor (and Lender agrees that if the estimated amount exceeds the actual fees and charges of Lender's legal counsel, then Lender will cause its legal counsel to return such excess to the Borrower promptly after completion of post-closing matters relating to the payoff contemplated herein).

This letter may be executed in one or more counterparts each of which shall be deemed to be an original and which together shall constitute the Agreement. For purposes of this letter, the signature page hereto signed and transmitted by facsimile machine is to be treated as an original document. The signature of any person thereon, for purposes hereof, is to be considered as an original signature, and this letter transmitted is to be considered to have the same binding effect as an original signature on an original document.

Sincerely,

By: _____

Lucian Lupascu, Vice President

Agreed and accepted to as of the date first written above:

By: _____

Mark J. Hivon

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6047 |
| | ) | |
| SUBURBAN IRON WORKS, INC. and | ) | Honorable Elaine E. Bucklo |
| MARK J. HIVON, | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ATTORNEY'S FEES, TIME AND TASKS

Daniel I. Schlade, having been first duly sworn on oath, states:

1.      FirstMerit Bank, N.A. ("FirstMerit"), retained the firm of Arnstein & Lehr, LLP to represent it in the above captioned suit against the named defendants.

2.      I am a partner with the firm of Arnstein & Lehr LLP, and one of the attorneys responsible for the handling this lawsuit.

3.      Although various are involved with this matter, I am the primary attorney responsible for the foreclosure, as detailed in the attached exhibits. My billable hour rate is $324.00 per hour, and the other attorney's respective billable rates are set forth in the invoices.

4.      All of these hourly rates are reasonable and comparable to rates charged by attorneys and staff of a comparative level at a firm of Arnstein & Lehr LLP's size, serving the same legal market as Arnstein & Lehr LLP, the metropolitan Chicago area.

5.      Attached hereto are true, correct and accurate copies of invoices detailing the total amount billed for attorney's fees and costs through February 28, 2014. These records identify the timekeepers that did the work each day, the amount of time that each timekeeper devoted to this matter on that day, and a description of the work performed. These time entries were

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL 60462

September 16, 2011

Invoice: 905824

Page 1

BHB

**Our Matter #**  **39671-0004**      **SUBURBAN IRON WORKS LOAN LEGACY MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH August 31, 2011

| | |
|---|---|
| 06/30/11 | REVIEW WELDING APPARATUS, SUBURBAN IRON WORKS, CHICAGO MANAGEMENT CONSULTANTS AND A&D PIZZA LOAN FILES FOR REVIEW SUMMARY |
| | ANDREW J. SANNES                1.00 hr. |
| 07/20/11 | DRAFT MEMORANDUM FOR FIRSTMERIT MATTERS; REVIEW UCC SEARCH RESULTS. |
| | ANDREW J. SANNES                2.00 hr. |
| 07/25/11 | DRAFT MEMORANDUM FOR FIRSTMERIT MATTERS; REVIEW TITLE SEARCH FINDINGS; REVIEW UCC SEARCH RESULTS. |
| | ANDREW J. SANNES                1.00 hr. |
| 08/04/11 | REVIEW TITLE SEARCH, UCC, LIEN, AND JUDGMENT SEARCHES FOR SUBURBAN IRON WORKS AND MARK HIVON; DRAFT SUMMARY ANALYSIS OF SAME AND FIRSTMERIT LOAN DOCUMENTS FOR SUBURBAN IRON WORKS LOAN FDIC # 10236002978/ LEGACY MIDWEST BANK # : 702338500001; DRAFT CORRESPONDENCE TO P. FLORY REGARDING SAME. |
| | ANDREW J. SANNES                3.00 hr. |
| 08/11/11 | REVIEW TITLE SEARCH, UCC, LIEN, AND JUDGMENT SEARCHES FOR SUBURBAN IRON WORKS AND MARK HIVON; REVIEW AND REVISE SUMMARY ANALYSIS OF SAME FOR FIRSTMERIT LOAN DOCUMENTS FOR SUBURBAN IRON WORKS LOAN FDIC # 10236002978/ LEGACY MIDWEST BANK # 702338500001. |
| | ANDREW J. SANNES                3.10 hr. |
| 08/12/11 | REVIEW TITLE SEARCH, UCC, LIEN, AND JUDGMENT SEARCHES FOR SUBURBAN IRON WORKS AND MARK HIVON; FINALIZE SUMMARY ANALYSIS OF SAME FOR FIRSTMERIT LOAN DOCUMENTS FOR SUBURBAN IRON WORKS LOAN FDIC # 10236002978/ LEGACY MIDWEST BANK # 702338500001; DRAFT CORRESPONDENCE TO P. FLORY REGARDING SAME. |
| | ANDREW J. SANNES                1.20 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| ANDREW J. SANNES | 11.30 | 340.00 | 3,842.00 |
| TOTAL | 11.30 | | $3,842.00 |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL 60462

September 16, 2011

Invoice: 905824

Page 2

Total Fees for Professional Services ................................................. 3,842.00

## REIMBURSABLE COSTS

ALOHA DOCUMENT SERVICES: FOR COPIES OF DOCUMENTS SPLIT     99.59
BETWEEN ALL FILES 8/4/11

Total Reimbursable Costs ........................................     99.59

Discount     ($473.00)

## TOTALS FOR THIS MATTER

Fees For Professional Services ........................................................     3,842.00
Reimbursable Costs .........................................................................     99.59
Less Credits and Adjustments ...........................................................     (473.00)

NET CURRENT BILLING FOR THIS MATTER .............................................     $3,468.59

TOTAL DUE FOR THIS MATTER ..............................................................     $3,468.59

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL  60462

October 13, 2011

Invoice:  908527

Page 1

BHB

**Our Matter #   39671-0004**          **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH September 30, 2011

| | | |
|---|---|---|
| 09/15/11 | CORRESPONDENCE FROM P FLORY;  REVIEW LOAN STATUS MEMO | |
| | BRUCE H. BALONICK | 0.30 hr. |
| 09/16/11 | REVIEWED CORRESPONDENCE FROM PETER FLOY AND BRUCE BALONICK.  REVIEWED _____ SUMMARY MEMORANDUM AND LOAN DOCUMENTS.  MET WITH BRUCE BALONICK.  CORRESPONDENCE TO BRUCE BALONICK.  TELEPHONE CALL WITH DINO ARMIROS.  MET WITH DANIEL SCHLADE RE: ▮▮▮▮▮▮▮ | |
| | ROBERT J. TAYLOR | 2.75 hr. |
| 09/19/11 | CORRESPONDENCE WITH P FLORY RE ▮▮▮▮▮▮▮▮▮ | |
| | BRUCE H. BALONICK | 0.30 hr. |
| 09/20/11 | CORRESPONDENCE REGARDING ▮▮▮▮▮▮▮▮▮▮ | |
| | BRUCE H. BALONICK | 1.20 hr. |
| 09/20/11 | REVIEWED SUBURBAN IRON WORKS FILE.  TELEPHONE CONFERENCE WITH BRUCE BALONICK.  TELEPHONE CONFERENCE WITH BRUCE BALONICK AND PETER FLOY. | |
| | ROBERT J. TAYLOR | 1.00 hr. |
| 09/21/11 | REVIEW P FLORY CORRESPONDENCE AND LOAN DOCUMENTS FOR PREPARATION OF DEMAND LETTER | |
| | BRUCE H. BALONICK | 0.25 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| BRUCE H. BALONICK | 2.05 | 595.00 | 1,219.75 |
| ROBERT J. TAYLOR | 3.75 | 415.00 | 1,556.25 |
| TOTAL | 5.80 | | $2,776.00 |

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL 60462

October 13, 2011

Invoice: 908527

Page 2

| | |
|---|---:|
| Total Fees for Professional Services ................................................. | 2,776.00 |

## REIMBURSABLE COSTS

| | |
|---|---:|
| FIRST AMERICAN TITLE INSURANCE: PAYMENT FOR TRACT SEARCH FOR FIRSTMERIT BANK RE; CHICAGO MANAGEMENT CONSULTANTS INC 8/04/11 | 350.00 |
| FIRST AMERICAN TITLE INSURANCE: PAYMENT FOR TRACT SEARCH FOR FIRSTMERIT BANK RE; CHICAGO MANAGEMENT CONSULTANTS INC 7/20/11 | 350.00 |
| CT CORPORATION: PAYMENT FOR UCC SEARCH JD LIENS STATE AND FEDERAL LIENS LITIGATIONS RE; FIRSTMERT BANK 7/14/11 0005-0003-0004 | 371.25 |
| Total Reimbursable Costs ........................................ | 1,071.25 |
| Discount | ($333.00) |

## TOTALS FOR THIS MATTER

| | |
|---|---:|
| Fees For Professional Services ............................................ | 2,776.00 |
| Reimbursable Costs ......................................................... | 1,071.25 |
| Less Credits and Adjustments ........................................... | (333.00) |
| NET CURRENT BILLING FOR THIS MATTER ............................. | **$3,514.25** |
| **TOTAL DUE FOR THIS MATTER** ............................................ | **$3,514.25** |

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL  60462

November 10, 2011

Invoice:  911705

Page 1

BHB

| Our Matter # | 39671-0004 | SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978 |
| --- | --- | --- |

FOR PROFESSIONAL SERVICES RENDERED THROUGH October 31, 2011

| 10/12/11 | PHONE CONF WITH A SANNES AND P FLORY;  CONF WITH R TAYLOR RE ▓▓▓▓▓▓ | |
| --- | --- | --- |
| | BRUCE H. BALONICK | 0.30 hr. |
| 10/13/11 | CONF WITH R TAYLOR;  REVIEW DRAFT DEFAULT NOTICE | |
| | BRUCE H. BALONICK | 0.25 hr. |
| 10/13/11 | REVIEWED LOAN SUMMARY MEMORANDUM OF LOAN DOCUMENTS.  MET WITH BRUCE BALONICK.  PREPARED DEFAULT NOTICE LETTER TO SUBURBAN IRON WORKS. | |
| | ROBERT J. TAYLOR | 1.50 hr. |
| 10/14/11 | REVIEW AND PROCESS DEFAULT NOTICE TO BORROWER AND GUARANTOR | |
| | BRUCE H. BALONICK | 0.20 hr. |
| 10/14/11 | REVIEWED CORRESPONDENCE FROM PETER FLOY.  REVIEWED REVISED DEFAULT NOTICE.  TELEPHONE CONFERENCE WITH BRUCE BALONICK. | |
| | ROBERT J. TAYLOR | 0.30 hr. |
| 10/19/11 | REVIEW REQUEST FROM P FLORY AND  AND LOAN DOCUMENTS AND APPROPRIATE STRATEGY FOR COLLECTION | |
| | BRUCE H. BALONICK | 0.25 hr. |
| 10/19/11 | REVIEW STATUS MEMO TO ASSESS STATE OF DOCUMENTS; REVIEW UNDERLYING DOCUMENTS IN ANTICIPATION OF STRATEGY MEETING. | |
| | KONSTANTINOS ARMIROS | 0.80 hr. |
| 10/19/11 | REVIEWED CORRESPONDENCE FROM BRUCE BALONICK AND REVIEWED FILE. | |
| | ROBERT J. TAYLOR | 0.50 hr. |
| 10/20/11 | CONF WITH R TAYLOR AND D ARMIROS RE STRATEGY:  REPLEVIN, GUARANTY, AND FORECLOSURE | |
| | BRUCE H. BALONICK | 0.70 hr. |

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL  60462

November 10, 2011

Invoice:  911705

Page 2

| Date | Description | | |
|---|---|---|---|
| 10/20/11 | INTERNAL OFFICE CONFERENCE REGARDING ██████████████████████████████, ANALYSIS OF DOCUMENTS AND DEFICIENCIES. | | |
| | KONSTANTINOS ARMIROS | 1.00 hr. | |
| 10/24/11 | PREPARE FOR AND PARTICIPATE IN STRATEGY CONF CALL WITH R TAYLOR, L LUPASCU AND P FLORY | | |
| | BRUCE H. BALONICK | 0.30 hr. | |
| 10/24/11 | PREPARED FOR TELEPHONE CONFERENCE RE STRATEGY MOVING FORWARD AGAINST BORROWER.  TELEPHONE CONFERENCE WITH BRUCE H. BALONICK; PETER FLORY AND LUCIAN LUPASCU.  REVIEWED CORRESPONDENCE FROM PETER FLORY.  TELEPHONE CONFERENCE WITH DINO ARMIROS. | | |
| | ROBERT J. TAYLOR | 0.80 hr. | |
| 10/25/11 | CORRESPONDENCE TO PETER FLORY  REGARDING ██████████████████████  MET WITH DANIEL SCHLADE; MET WITH SARAH RYCZEK REGARDING MINUTES OF FORECLOSURE AND UCC SEARCHES. | | |
| | ROBERT J. TAYLOR | 1.50 hr. | |
| 10/27/11 | CORRESPONDENCE RE STATUS | | |
| | BRUCE H. BALONICK | 0.10 hr. | |
| 10/27/11 | TELEPHONE CONFERENCE WITH PETER FLORY.  REVIEWED CORRESPONDENCE FROM MARK HIVON AND PETER FLORY.  REVIEWED UCC AND TAX LIEN SEARCHES. | | |
| | ROBERT J. TAYLOR | 0.50 hr. | |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| BRUCE H. BALONICK | 2.10 | 595.00 | 1,249.50 |
| KONSTANTINOS ARMIROS | 1.80 | 550.00 | 990.00 |
| ROBERT J. TAYLOR | 5.10 | 415.00 | 2,116.50 |
| TOTAL | 9.00 | | $4,356.00 |

Total Fees for Professional Services ................................................     4,356.00

LAW OFFICES

## ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL 60462

November 10, 2011

Invoice: 911705

Page 3

Discount      ($522.72)

### TOTALS FOR THIS MATTER

| | |
|---|---|
| Fees For Professional Services ........................................................... | 4,356.00 |
| Reimbursable Costs ........................................................................... | 0.00 |
| Less Credits and Adjustments ........................................................... | (522.72) |
| NET CURRENT BILLING FOR THIS MATTER ........................................... | $3,833.28 |
| TOTAL DUE FOR THIS MATTER ............................................................ | $3,833.28 |

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL 60462

July 9, 2012

Invoice: 935408

Page 1

BHB

**Our Matter #   39671-0004      SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC**
**#10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH June 30, 2012

| | | |
|---|---|---|
| 06/13/12 | PHONE AND CORRESPONDENCE RE ███████████████████ | |
| | BRUCE H. BALONICK | 0.25 hr. |
| 06/13/12 | MET WITH BRUCE BALONICK RE FORECLOSURE OF SUBURBAN IRON WORKS LOAN. | |
| | ROBERT J. TAYLOR | 0.20 hr. |
| 06/14/12 | STRATEGY AND CONFERENCES WITH R TAYLOR AND D SCHLADE RE FEDERAL FORECLOSURE ACTIONS AND TITLE ISSUES | |
| | BRUCE H. BALONICK | 0.30 hr. |
| 06/14/12 | TELEPHONE CONFERENCE WITH DANIEL SCHLADE RE ███████████████. REVIEWED CORRESPONDENCE FROM DANIEL SCHLADE.  CORRESPONDENCE TO DANIEL SCHLADE RE MINUTES OF FORECLOSURE AND TITLE INSURANCE. | |
| | ROBERT J. TAYLOR | 0.40 hr. |

### SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| BRUCE H. BALONICK | 0.55 | 476.00 | 261.80 |
| ROBERT J. TAYLOR | 0.60 | 344.00 | 206.40 |
| TOTAL | 1.15 | | $468.20 |

Total  Fees for Professional Services ...................................................        468.20

Discount                                                                            ($56.18)

### TOTALS FOR THIS MATTER

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: DEBORAH WAGNER
14701 S. LAGRANGE RD.
Orland Park IL  60462

July 9, 2012

Invoice:  935408

Page 2

| | |
|---|---:|
| Fees For Professional Services ........................................................ | 468.20 |
| Reimbursable Costs ......................................................................... | 0.00 |
| Less Credits and Adjustments .......................................................... | (56.18) |
| NET CURRENT BILLING FOR THIS MATTER ........................................... | $412.02 |
| TOTAL DUE FOR THIS MATTER ............................................................ | $412.02 |

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

August 15, 2012

Invoice: 939747

Page 1

BHB

**Our Matter #** **39671-0004** **SUBURBAN IRON WORKS LOAN LEGACY MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH July 31, 2012

| | | |
|---|---|---|
| 07/02/12 | REVIEW CORRESPONDENCE AND CONF RE █████████████ | |
| | BRUCE H. BALONICK | 0.25 hr. |
| 07/02/12 | CONFERENCE WITH R. TAYLOR REGARDING ████████████████ (.5); REVIEWING THE LOAN FILE AND LOAN DOCUMENTS (.6). | |
| | DANIEL I. SCHLADE | 1.10 hr. |
| 07/02/12 | REVIEWED FILE RE STATUS OF LOAN, LOAN DOCUMENTS AND TITLE MATTERS. MET WITH DANIEL SCHLADE. REVIEWED STATUS SUMMARY AND NOTICE OF DEFAULT. | |
| | ROBERT J. TAYLOR | 1.30 hr. |
| 07/03/12 | REVIEWING PROPOSED PARTY CITIZENSHIP LOCALES TO CONFIRM DIVERSITY OF CITIZENSHIP (.5); PHONE CALL TO CLIENT ████████████████ ██████ (.1); REVIEWING MOST RECENT TITLE TRACT FOR THE PROPERTY (.2). | |
| | DANIEL I. SCHLADE | 0.80 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| BRUCE H. BALONICK | 0.25 | 476.00 | 119.00 |
| DANIEL I. SCHLADE | 1.90 | 304.00 | 577.60 |
| ROBERT J. TAYLOR | 1.30 | 344.00 | 447.20 |
| TOTAL | 3.45 | | $1,143.80 |

Total Fees for Professional Services ................................................. 1,143.80

Discount ($154.24)

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

August 15, 2012

Invoice: 939747

Page 2

## TOTALS FOR THIS MATTER

| | |
|---|---:|
| Fees For Professional Services ......................................................... | 1,143.80 |
| Reimbursable Costs ....................................................................... | 0.00 |
| Less Credits and Adjustments ......................................................... | (154.24) |
| NET CURRENT BILLING FOR THIS MATTER ........................................... | $989.56 |
| TOTAL DUE FOR THIS MATTER ............................................................. | $989.56 |

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

October 4, 2012

Invoice:  944504

Page 1

BHB

| Our Matter # | 39671-0004 | SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978 |

FOR PROFESSIONAL SERVICES RENDERED THROUGH September 30, 2012

| 09/04/12 | PHONE CONF WITH P FLORY;  REVIEW PRIOR CORRESPONDENCE/DEMANDS;  CONF WITH R TAYLOR |
| | BRUCE H. BALONICK | 0.35 hr. |

| 09/05/12 | PHONE CONFERENCE WITH R. TAYLOR REGARDING ▮▮▮▮▮▮▮▮▮ (.2); REVIEWING THE LOAN FILE (.4). |
| | DANIEL I. SCHLADE | 0.60 hr. |

| 09/06/12 | REVIEWED FILE DOCUMENTS; REVIEW MEMORANDUM AND PRIOR DEFAULT LETTER. TELEPHONE CONFERENCE WITH DANIEL SCHLADE. [LOAN #70233850001] [FDIC# 10236002978] |
| | ROBERT J. TAYLOR | 1.00 hr. |

| 09/07/12 | REVIEW CORRESPONDENCE RE CALCULATION OF OUTSTANDING BALANCE AND STATUS |
| | BRUCE H. BALONICK | 0.25 hr. |

| 09/07/12 | REVIEWING LOAN DOCUMENTS AND FILE (.2); PHONE CONFERENCE WITH R. TAYLOR REGARDING ▮▮▮▮▮▮▮ (.1); PHONE CONFERENCE WITH PETER FLORY REGARDING ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (.2); REVIEW EMAIL FROM PETER FLORY REGARDING THE ▮▮▮▮▮▮▮ REVIEW LOAN DOCUMENTS, AND DRAFT RESPONSE EMAIL (.2); DRAFT TWO EMAILS TO R. TAYLOR REGARDING ▮▮▮▮▮▮▮ (.2). |
| | DANIEL I. SCHLADE | 0.90 hr. |

| 09/07/12 | TELEPHONE CONFERENCE WITH DANIEL SCHLADE.  REVIEWED PRIOR DEMAND LETTER AND CORRESPONDENCE FROM PETER FLORY.  PREPARED DEFAULT AND DEMAND LETTER. [LOAN #7023388600001] |
| | ROBERT J. TAYLOR | 1.00 hr. |

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

October 4, 2012

Invoice: 944504

Page 2

| | | |
|---|---|---|
| 09/10/12 | REVIEW LOAN DOCUMENTS TO DETERMINE REQUIREMENTS OF THE NOTICE PROVISIONS (.2); REVIEW DRAFT NOTICE OF DEFAULT AND ACCELERATION LETTER, AND DRAFT REVISIONS TO THE LETTER (.2); CONFERENCE WITH R. TAYLOR REGARDING ███████ (.1). | |
| | DANIEL I. SCHLADE | 0.50 hr. |
| 09/10/12 | TELEPHONE CONFERENCE WITH DANIEL SCHLADE. REVISED NOTICE AND DEMAND LETTER TO SUBURBAN IRON WORKS, INC. AND MARK HIVON. | |
| | ROBERT J. TAYLOR | 0.50 hr. |
| 09/17/12 | PHONE CALL FROM PETER FLORY REGARDING ███████ (.1); DRAFT EMAIL TO PETER FLORY WITH COPY OF DEMAND LETTER SENT TO BORROWER (.1); REVIEW EMAIL FROM PETER FLORY REGARDING ███████ AND DRAFT RESPONSE EMAIL REGARDING ███████ (.1). | |
| | DANIEL I. SCHLADE | 0.30 hr. |

### SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| BRUCE H. BALONICK | 0.60 | 476.00 | 285.60 |
| DANIEL I. SCHLADE | 2.30 | 304.00 | 699.20 |
| ROBERT J. TAYLOR | 2.50 | 344.00 | 860.00 |
| TOTAL | 5.40 | | $1,844.80 |

Total Fees for Professional Services ...................................................... 1,844.80

### REIMBURSABLE COSTS

SPECIAL POSTAGE/PRIORITY MAIL/EXPRESS MAIL CHARGES      11.50

Total Reimbursable Costs ........................................... 11.50

Discount      ($222.76)

## ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

October 4, 2012

Invoice:  944504

Page 3

### TOTALS FOR THIS MATTER

| | |
|---|---:|
| Fees For Professional Services ......................................................... | 1,844.80 |
| Reimbursable Costs ........................................................................ | 11.50 |
| Less Credits and Adjustments ......................................................... | (222.76) |
| NET CURRENT BILLING FOR THIS MATTER ............................................ | $1,633.54 |
| **TOTAL DUE FOR THIS MATTER** ............................................................. | **$1,633.54** |

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

November 7, 2012

Invoice: 947878

Page 1

BHB

**Our Matter #   39671-0004**   **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC
#10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH October 31, 2012

10/03/12   REVIEW FILE AND DRAFT EMAIL TO PETER FLORY REGARDING ███████████
████████████████ (.1); REVIEW RESPONSE EMAIL FROM PETER FLORY
REGARDING███████████████████████, AND DRAFT REPLY
EMAIL (.1).

DANIEL I. SCHLADE                      0.20 hr.

### SUMMARY OF FEES

|  | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 0.20 | 304.00 | 60.80 |
| TOTAL | 0.20 |  | $60.80 |

Total  Fees for Professional Services ................................................... 60.80

Discount ($7.30)

### TOTALS FOR THIS MATTER

Fees For Professional Services ......................................................... 60.80
Reimbursable Costs ......................................................................... 0.00
Less Credits and Adjustments ......................................................... (7.30)

NET CURRENT BILLING FOR THIS MATTER ............................................. **$53.50**

**TOTAL DUE FOR THIS MATTER** .............................................................. **$53.50**

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

EIN: 36-2041272

November 7, 2012

Invoice: 947878

Page 2

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

July 11, 2013

Invoice:  972726

Page 1

BHB

Our Matter #   39671-0004          SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC
#10236002978

FOR PROFESSIONAL SERVICES RENDERED THROUGH June 30, 2013

06/03/13     PHONE CONFERENCE WITH PETER FLORY REGARDING ██████████████████████
             ████████████████ (.2); DRAFT EMAIL TO B.
             BALONICK REGARDING ████████████████████████ (.1); REVIEW RESPONSE EMAIL FROM B.
             BALONICK WITH QUESTIONS REGARDING ████████████
             ████████████ REVIEW LOAN FILE, AND DRAFT RESPONSE EMAIL TO B. BALONICK (.3);
             PHONE CALL TO LUCIAN LUPASCU REGARDING ██████████
             (.1).

             DANIEL I. SCHLADE                    0.70 hr.

06/04/13     PHONE CONFERENCE WITH LUCIAN LUPASCU REGARDING ████████████
             ████████████ AND ORDERING OF MINUTES OF FORECLOSURE.

             DANIEL I. SCHLADE                    0.20 hr.

06/05/13     FIRSTMERIT-SUBURBAN IRONWORKS CONFERENCE WITH AGENTS AT GREATER ILLINOIS TITLE
             REGARDING FILING OF THE FORECLOSURE SUIT IN FEDERAL COURT WITHOUT NAMING UNKNOWN
             OWNERS AND NON-RECORD CLAIMANTS (.2); REVIEWING THE LOAN FILE AND PREPARING THE
             FORECLOSURE COMPLAINT (.6).

             DANIEL I. SCHLADE                    0.80 hr.

06/20/13     REVIEWING MINUTES OF FORECLOSURE PREPARED BY GREATER ILLINOIS TITLE (.3); DRAFT EMAIL TO
             LUCIAN LUPASCU REGARDING ████████████████████████
             ████████████████████████ (.4).

             DANIEL I. SCHLADE                    0.70 hr.

06/24/13     REVIEW EMAIL FROM TITLE COMPANY REGARDING REVISIONS TO THE MINUTES OF FORECLOSURE.

             DANIEL I. SCHLADE                    0.20 hr.

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

July 11, 2013

Invoice:  972726

Page 2

## SUMMARY OF FEES

|  | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 2.60 | 316.00 | 821.60 |
| TOTAL | 2.60 |  | $821.60 |

Total  Fees for Professional Services ................................................. 821.60

12% Fee Discount ($98.60)

## TOTALS FOR THIS MATTER

Fees For Professional Services ........................................................ 821.60

Reimbursable Costs .......................................................................... 0.00

Less Credits and Adjustments ........................................................... (98.60)

NET CURRENT BILLING FOR THIS MATTER ............................................ $723.00

TOTAL DUE FOR THIS MATTER ............................................................. $723.00

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

August 8, 2013

Invoice: 974903

Page 1

BHB

Our Matter # 39671-0004      SUBURBAN IRON WORKS LOAN LEGACY MIDWEST BANK #702338500001/FDIC
#10236002978

FOR PROFESSIONAL SERVICES RENDERED THROUGH July 31, 2013

07/10/13     DRAFT EMAIL TO LUCIAN LUPASCU REGARDING ███████████████████████

DANIEL I. SCHLADE                    0.20 hr.

### SUMMARY OF FEES

|  | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 0.20 | 316.00 | 63.20 |
| TOTAL | 0.20 |  | $63.20 |

Total Fees for Professional Services .................................................. 63.20

Discount                                                              ($7.58)

### TOTALS FOR THIS MATTER

Prior Balance Brought Forward ............................................................. $723.00

Fees For Professional Services ....................................................... 63.20

Reimbursable Costs ............................................................. 0.00

Less Credits and Adjustments ............................................................. (7.58)

NET CURRENT BILLING FOR THIS MATTER ............................................. $55.62

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

August 8, 2013

Invoice: 974903

Page 2

**TOTAL DUE FOR THIS MATTER** ............................................................... **$778.62**

EIN: 36-2041272

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

September 20, 2013

Invoice: 978896

Page 1

BHB

**Our Matter #  39671-0004**        **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH August 31, 2013

| | | |
|---|---|---|
| 08/01/13 | REVIEWING THE LOAN DOCUMENTS AND FILE FOR PROPER RECORDS OF LOAN ASSIGNMENTS (.3); PHONE CONFERENCE WITH LUCIAN LUPASCU REGARDING ██████████ (.2); PHONE CONFERENCE WITH LUCIAN LUPASCU REGARDING ████████████ (.1); REVIEWING LOAN FILE AND TITLE RECORDS IN ORDER TO ██████████ (.2); DRAFTING THE FORECLOSURE COUNT (1.0); DRAFTING THE BREACH OF GUARANTY CLAIM (.7). | |
| | DANIEL I. SCHLADE | 2.50 hr. |
| 08/02/13 | PREPARE DRAFT ASSIGNMENT OF LOAN DOCUMENTS AND ALLONGE FOR ATTORNEY REVIEW. | |
| | PATTY RAMOS | 1.80 hr. |
| 08/05/13 | REVIEW AND FOLLOW UP WITH ATTORNEY REGARDING DRAFT ALLONGE AND ASSIGNMENT OF LOAN DOCUMENTS. | |
| | PATTY RAMOS | 0.20 hr. |
| 08/13/13 | DRAFT EMAIL TO LUCIAN LUPASCU REGARDING ████████████████████ ██████ | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 08/26/13 | REVIEW EXECUTED ALLONGE AND ASSIGNMENT OF LOAN INSTRUMENTS FROM CLIENT (.1); CONDUCTING FINAL REVIEW OF COMPLAINT AND DRAFTING FINAL REVISIONS TO THE MORTGAGE FORECLOSURE CLAIM AND THE BREACH OF GUARANTY CLAIM (.8); CONDUCT TITLE REVIEW OF THE PROPERTY PRIOR TO FILING THE COMPLAINT (.6); PREPARING THE EXHIBITS TO THE COMPLAINT (.6); REVIEW TITLE TRACT AND ██████████████ ██████████ (.5); PHONE CONFERENCE WITH THE CLERK'S OFFICE REGARDING ISSUANCE OF SUMMONS (.2); DRAFTING APPEARANCE (.3); DRAFTING CIVIL ACTION COVER SHEET (.3); PREPARING ALL PLEADINGS FOR ELECTRONIC FILING (.4); DRAFT EMAIL TO LUCIAN LUPASCU REGARDING ████████████████ (.2). | |
| | DANIEL I. SCHLADE | 3.90 hr. |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

September 20, 2013

Invoice: 978896

Page 2

## SUMMARY OF FEES

|  | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 6.60 | 316.00 | 2,085.60 |
| PATTY RAMOS | 2.00 | 184.00 | 368.00 |
| TOTAL | 8.60 |  | $2,453.60 |

Total Fees for Professional Services ................................................. 2,453.60

## REIMBURSABLE COSTS

| LEXIS | 55.99 |
|---|---|
| LAKE IL RECORDER: FEE | 16.00 |
| LAKE IL RECORDER: NEW SUBSCRIPTION ASSIGNED | 5.00 |
| COURTS/USDC: FEE | 400.00 |
| PHOTOCOPY CHARGES | 18.00 |
| Total Reimbursable Costs ......................................... | 494.99 |

Discount

($353.83)

## TOTALS FOR THIS MATTER

Fees For Professional Services ........................................................ 2,453.60

Reimbursable Costs .......................................................................... 494.99

Less Credits and Adjustments .......................................................... (353.83)

NET CURRENT BILLING FOR THIS MATTER ........................................... $2,594.76

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

September 20, 2013

Invoice:  978896

Page 3

**TOTAL DUE FOR THIS MATTER** .................................................................. **$2,594.76**

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

October 9, 2013

Invoice: 980576

Page 1

BHB

Our Matter # 39671-0004     SUBURBAN IRON WORKS LOAN LEGACY MIDWEST BANK #702338500001/FDIC #10236002978

FOR PROFESSIONAL SERVICES RENDERED THROUGH September 30, 2013

| | | |
|---|---|---|
| 09/03/13 | PHONE CALL TO CLERK'S OFFICE REGARDING STATUS OF ISSUING SUBPOENAS. | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 09/04/13 | REVIEW MINUTE ORDER ENTERED TODAY REGARDING JUDGE ASSIGNMENTS. | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 09/16/13 | DRAFTING SUMMONS TO SUBURBAN IRON WORKS (.3); DRAFTING SUMMONS TO MARK HIVON (.2); DRAFT EMAIL TO CLERK OF THE COURT REGARDING ISSUANCE OF SUMMONS (.1). | |
| | DANIEL I. SCHLADE | 0.60 hr. |
| 09/16/13 | DRAFT CORRESPONDENCE TO THE PROCESS SERVER WITH INSTRUCTIONS FOR SERVICE OF PROCESS ON DEFENDANTS. | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 09/25/13 | REVIEW AFFIDAVIT OF SERVICE ON SUBURBAN IRON WORKS, AND PHONE CALL TO SPECIAL PROCESS SERVER REGARDING STATUS OF SERVICE OF PROCESS ON MARK HIVON. | |
| | DANIEL I. SCHLADE | 0.20 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 1.40 | 316.00 | 442.40 |
| TOTAL | 1.40 | | $442.40 |

Total Fees for Professional Services ...................................................     442.40

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

October 9, 2013

Invoice: 980576

Page 2

Discount ($53.09)

## TOTALS FOR THIS MATTER

| | |
|---|---:|
| Prior Balance Brought Forward ........................................................................ | $2,594.76 |
| Fees For Professional Services ......................................... | 442.40 |
| Reimbursable Costs ............................................................ | 0.00 |
| Less Credits and Adjustments ............................................ | (53.09) |
| NET CURRENT BILLING FOR THIS MATTER ............................................ | $389.31 |
| **TOTAL DUE FOR THIS MATTER** ............................................................. | **$2,984.07** |

EIN: 36-2041272

December 6, 2013

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

Invoice:  986433

Page 1

BHB

**Our Matter #  39671-0004**          **SUBURBAN IRON WORKS LOAN LEGACY MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH November 30, 2013

| | | |
|---|---|---|
| 11/15/13 | CONFERENCE WITH D. ARMIROS REGARDING ████████ | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 11/18/13 | PRELIMINARY REVIEW OF FILE; REVIEW SECURITY AGREEMENTS AND PRIOR UCC STATEMENTS; ORDER NEW UCC SEARCH. | |
| | KONSTANTINOS ARMIROS | 1.20 hr. |
| 11/18/13 | CONFERENCE WITH M. NOVICK REGARDING ████████ | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 11/18/13 | RESEARCH UCC ART. 9 RULES AND PROCEDURES. | |
| | MICHAEL A. JACOBSON | 0.50 hr. |
| 11/18/13 | REVIEW AMENDED ARTICLE NINE AND LOAN DOCUMENTS IN CONNECTION WITH UCC SALE (1.1); CONFERENCE WITH D. ARMIROS REGARDING SAME (.3); CORRESPONDENCE TO AND FROM D. SCHLADE REGARDING ████████ (.2). | |
| | MICHELLE G. NOVICK | 1.60 hr. |
| 11/18/13 | REVIEW AND PREPARE CORRESPONDENCE REGARDING ORDERING UCC, TAX LIEN AND JUDGMENT SEARCHES. | |
| | ROBIN A. CARLUCCI | 0.40 hr. |
| 11/19/13 | CASE STRATEGY CONFERENCE WITH DAN SCHLADE REGARDING COURT DATE | |
| | ASHLEY H. FORTE | 0.20 hr. |
| 11/19/13 | REVIEW DEFENDANT'S ANSWER TO THE COMPLAINT (.3); CONFERENCE WITH A. FORTE REGARDING PREPARING FOR THE 11-20-2013 INITIAL CASE MANAGEMENT CONFERENCE (.2). | |
| | DANIEL I. SCHLADE | 0.50 hr. |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

| Date | Description | | Hours |
|---|---|---|---|
| 11/20/13 | ATTENDED COURT FOR STATUS DATE AND CASE STRATEGY EMAIL WITH DAN SCHLADE | | |
| | ASHLEY H. FORTE | 1.60 hr. | |
| 11/20/13 | DRAFT EMAIL TO M. NOVICK REGARDING ██████████████████████████ ████████████████████████████████████ ████████████████ | | |
| | DANIEL I. SCHLADE | 0.20 hr. | |
| 11/20/13 | CONFERENCE WITH D. ARMIROS REGARDING ████████████████(.1); CONFERENCE WITH D. SCHLADE REGARDING ██████████████(.2). | | |
| | MICHELLE G. NOVICK | 0.30 hr. | |
| 11/20/13 | REVIEW UCC, TAX LIEN AND JUDGMENT SEARCHES; PREPARE CORRESPONDENCE TO K. ARMIROS ATTACHING SAME FOR REVIEW. | | |
| | ROBIN A. CARLUCCI | 0.30 hr. | |
| 11/21/13 | EXCHANGE EMAILS WITH M. NOVICK REGARDING ████████████████████████ (.2); REVIEW MINUTE ORDER ENTERED BY JUDGE BUCKLO SETTING BRIEFING SCHEDULE ON THE MOTION FOR SUMMARY JUDGMENT (.1). | | |
| | DANIEL I. SCHLADE | 0.30 hr. | |
| 11/25/13 | REVIEW LOAN DOCUMENTS; PREPARE DEMAND LETTER; IDENTIFY PARTIES FOR RECEIPT; REVIEW UCC SEARCHES. | | |
| | KONSTANTINOS ARMIROS | 1.50 hr. | |
| 11/26/13 | REVISE DEMAND LETTER; FURTHER REVIEW OF LOAN DOCUMENTS PERTAINING TO MORTGAGE, IDENTITY OF LENDER AND RELATED ISSUES; IDENTIFY MECHANISM FOR SERVICE. | | |
| | KONSTANTINOS ARMIROS | 1.20 hr. | |
| 11/29/13 | FINALIZE DEMAND LETTER FOR ISSUANCE; REVIEW ADDRESSES; FINAL REVIEW OF LOAN DOCUMENTS. | | |
| | KONSTANTINOS ARMIROS | 0.50 hr. | |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| ASHLEY H. FORTE | 1.80 | 240.00 | 432.00 |
| DANIEL I. SCHLADE | 1.20 | 316.00 | 379.20 |
| KONSTANTINOS ARMIROS | 4.40 | 468.00 | 2,059.20 |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

December 6, 2013

Invoice: 986433

Page 3

| | | | |
|---|---|---|---|
| MICHAEL A. JACOBSON | 0.50 | 60.00 | 30.00 |
| MICHELLE G. NOVICK | 2.10 | 400.00 | 840.00 |
| ROBIN A. CARLUCCI | 0.70 | 200.00 | 140.00 |
| TOTAL | 10.70 | | $3,880.40 |

Total Fees for Professional Services ................................................. 3,880.40

## REIMBURSABLE COSTS

INFINITY: UCC TAX LIEN AND JUDGEMENT SEARCH / STATE OF IL AND        232.50
COOK COUNTY FOR SUBURBAN IRON WORKS RE; FIRST MERIT BANK
11/20/13

Total Reimbursable Costs .......................................        232.50

Discount        ($493.55)

## TOTALS FOR THIS MATTER

Prior Balance Brought Forward ..................................................................        $2,594.76

Fees For Professional Services ........................................................        3,880.40

Reimbursable Costs ...........................................................................        232.50

Less Credits and Adjustments ...........................................................        (493.55)

NET CURRENT BILLING FOR THIS MATTER ............................................        $3,619.35

**TOTAL DUE FOR THIS MATTER** ...............................................................        **$6,214.11**

EIN: 36-2041272

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

January 14, 2014

Invoice:  989481

Page 1

BHB

**Our Matter #   39671-0004**          **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH December 31, 2013

| | | |
|---|---|---|
| 12/03/13 | REVIEW EMAIL FROM LUCIAN LUPASCU REGARDING████████AND DRAFT RESPONSE EMAIL REGARDING████████ | |
| | DANIEL I. SCHLADE | 0.20 hr. |
| 12/03/13 | TELEPHONE CONFERENCE WITH COUNSEL FOR DEBTOR. | |
| | KONSTANTINOS ARMIROS | 0.30 hr. |
| 12/03/13 | CORRESPONDENCE TO AND FROM L. LUPASCU████████ ████████(.1); TELEPHONE CALL TO L. LUPASCU████████(.1); CONFERENCE WITH D. ARMIROS REGARDING████(.1). | |
| | MICHELLE G. NOVICK | 0.30 hr. |
| 12/04/13 | CORRESPONDENCE TO AND FROM L. LUPASCU CONFIRMING████████ (.1); CONFERENCE WITH D. ARMIROS REGARDING████(.1). | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 12/05/13 | CONFERENCE WITH CLIENT AND CO-COUNSEL RE:████████ ████████ | |
| | KONSTANTINOS ARMIROS | 0.50 hr. |
| 12/05/13 | PREPARE FOR AND PARTICIPATE IN CONFERENCE CALL WITH L. LUPASCU AND D. ARMIROS ADVISING OF████████ | |
| | MICHELLE G. NOVICK | 0.50 hr. |
| 12/07/13 | REVIEW RESEARCH ON REPLEVIN ACTIONS IN PREPARATION FOR DRAFT IN REPLEVIN COMPLAINT. | |
| | MICHELLE G. NOVICK | 0.50 hr. |
| 12/09/13 | RESEARCH ANNOTATED ILLINOIS STATUTES REGARDING REPLEVIN ACTIONS. | |
| | MICHAEL A. JACOBSON | 0.20 hr. |

January 14, 2014

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

Invoice: 989481

Page 2

| | | |
|---|---|---|
| 12/10/13 | TELEPHONE CONFERENCE WITH DEBTOR'S COUNSEL. | |
| | KONSTANTINOS ARMIROS | 0.30 hr. |
| 12/10/13 | REVIEW APPLICABLE LAW ON REPLEVIN (.9); DRAFT COMPLAINT FOR REPLEVIN (.7); TELEPHONE CONFERENCES WITH L. LUPASCU REGARDING ▓▓▓▓▓▓▓ (.4); TELEPHONE CALLS TO AND FROM N. CARLSON, COUNSEL FOR SUBURBAN, REGARDING SAME (.1). | |
| | MICHELLE G. NOVICK | 2.10 hr. |
| 12/11/13 | PHONE CONFERENCE WITH LUCIAN LUPASCU REGARDING ▓▓▓▓▓▓▓ (.3); PHONE CONFERENCE WITH M. NOVICK AND BORROWER'S COUNSEL REGARDING THE OFFER TO GIVE BACK THE PROPERTY (.2); DRAFT EMAIL TO LUCIAN LUPASCU REGARDING ▓▓▓ (.1). | |
| | DANIEL I. SCHLADE | 0.60 hr. |
| 12/11/13 | TELEPHONE CONFERENCES WITH N. CARLSON, COUNSEL FOR SUBURBAN, REGARDING OBTAINING TITLE TO PROPERTY, INVENTORY AND EQUIPMENT LISTING, ENTERING JUDGMENT AND RELATED ISSUES (.6); TELEPHONE CONFERENCES WITH D. SCHLADE REGARDING ▓▓▓ (.4); TELEPHONE CONFERENCES WITH L. LUPASCU ▓▓▓ (.5). | |
| | MICHELLE G. NOVICK | 1.50 hr. |
| 12/12/13 | CORRESPONDENCE TO AND FROM N. CARLSON CONFIRMING RECEIPT OF INFORMATION AND DATE/TIME AUCTIONEERS WILL INVENTORY PREMISES (.3); CORRESPONDENCE TO AND FROM L. LUPASCU REGARDING ▓▓▓ (.2); CORRESPONDENCE TO N. CARLSON ENCLOSING APPRAISAL AND PERSONAL FINANCIAL SALES (.2). | |
| | MICHELLE G. NOVICK | 0.70 hr. |
| 12/13/13 | CORRESPONDENCE TO AND FROM L. LUPASCU ENCLOSING ▓▓▓▓▓▓▓ | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 12/16/13 | PHONE CONFERENCE WITH M. NOVICK REGARDING ▓▓▓▓▓▓▓ | |
| | DANIEL I. SCHLADE | 0.20 hr. |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

January 14, 2014

Invoice: 989481

Page 3

| | | |
|---|---|---|
| 12/16/13 | TELEPHONE CONFERENCE WITH N. CARLSON, COUNSEL FOR SUBURBAN, REQUESTING CONTRACTS AND CONFIRMING REVIEW OF EQUIPMENT BY AUCTIONEERS AND RELATED ISSUES (.3); CORRESPONDENCE TO AND FROM N. CARLSON REGARDING SAME (.2); CORRESPONDENCE TO L. LUPASCU ENCLOSING ███████████████████████████████████████████ (.2); TELEPHONE CONFERENCE WITH L. LUPASCU REGARDING █████ (.3). | |
| | MICHELLE G. NOVICK | 1.00 hr. |
| 12/17/13 | CORRESPONDENCE TO AND FROM N. CARLSON REGARDING RECEIPT OF CONTRACTS AND RELATED DOCUMENTS (.1); CORRESPONDENCE TO L. LUPASCU ADVISING ██████ (.1). | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 12/18/13 | CORRESPONDENCE TO AND FROM N. CARLSON REGARDING RECEIPT OF DOCUMENTS AND EXCHANGE OF INFORMATION IN ADVANCE OF MEETING WITH AUCTIONEERS (.3); TELEPHONE CONFERENCE WITH N. CARLSON REGARDING SAME (.3). | |
| | MICHELLE G. NOVICK | 0.60 hr. |
| 12/19/13 | PHONE CONFERENCE WITH M. NOVICK REGARDING ███████████ (.1); TWO PHONE CONFERENCES WITH COUNSEL FOR BORROWER REGARDING PROPOSED AGREED MOTION FOR ENTRY OF JUDGMENT OF FORECLOSURE (.2); PHONE CONFERENCE WITH LUCIAN LUPASCU ███████████████████████████████████ (.2); FOLLOW-UP PHONE CONFERENCE WITH M. NOVICK TO DISCUSS ██████████ (.2). | |
| | DANIEL I. SCHLADE | 0.70 hr. |
| 12/19/13 | TELEPHONE CONFERENCE WITH N. CARLSON, COUNSEL FOR SUBURBAN, REGARDING RECEIPT OF CONTRACTS AND SALE OF REAL ESTATE (.3); BRIEF REVIEW OF CURRENT AND PENDING CONTRACTS (.2); CONFERENCE WITH D. ARMIROS REGARDING ████ (.2); CONFERENCE WITH D. SCHLADE REGARDING ██████████████████████ (.3); CORRESPONDENCE TO L. LUPASCU ADVISING OF ████████████ (.2). | |
| | MICHELLE G. NOVICK | 1.20 hr. |
| 12/20/13 | DRAFT MOTION FOR EXTENSION TO FILE MOTION FOR SUMMARY JUDGMENT (.2); DRAFT NOTICE OF MOTION (.2); PREPARE PLEADINGS FOR ELECTRONIC FILING (.2). | |
| | DANIEL I. SCHLADE | 0.60 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 2.30 | 316.00 | 726.80 |

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

January 14, 2014

Invoice:  989481

Page 4

| | | | |
|---|---|---|---|
| KONSTANTINOS ARMIROS | 1.10 | 468.00 | 514.80 |
| MICHAEL A. JACOBSON | 0.20 | 160.00 | 32.00 |
| MICHELLE G. NOVICK | 9.00 | 400.00 | 3,600.00 |
| TOTAL | 12.60 | | $4,873.60 |

Total  Fees for Professional Services .................................................  4,873.60

## REIMBURSABLE COSTS

UNITED PARCEL SERVICE: 501 W. NORTH AVE; MELROS PARK,IL       19.15

PHOTOCOPY CHARGES       87.00

Total Reimbursable Costs ........................................  106.15

Discount       ($597.57)

## TOTALS FOR THIS MATTER

Fees For Professional Services ........................................................  4,873.60

Reimbursable Costs ...........................................................  106.15

Less Credits and Adjustments ...........................................................  (597.57)

NET CURRENT BILLING FOR THIS MATTER ............................................  $4,382.18

**TOTAL DUE FOR THIS MATTER** ...............................................................  **$4,382.18**

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

February 11, 2014

Invoice:  991527

Page 1

BHB

**Our Matter #  39671-0004**          **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH January 31, 2014

| | | |
|---|---|---|
| 01/02/14 | CORRESPONDENCE TO AND FROM L. LUPASCU TO ████████████ (.2); CONFERENCE WITH D. SCHLADE REGARDING ████ (.1). | |
| | MICHELLE G. NOVICK | 0.30 hr. |
| 01/03/14 | PHONE CONFERENCE WITH LUCIAN LUPASCU AND M. NOVICK REGARDING ████████ | |
| | DANIEL I. SCHLADE | 0.60 hr. |
| 01/03/14 | TELEPHONE CONFERENCE WITH L. LUPASCU AND D. SCHLADE REGARDING ████████ ████████████ | |
| | MICHELLE G. NOVICK | 0.50 hr. |
| 01/06/14 | TELEPHONE CONFERENCE WITH N. CARLSON, COUNSEL FOR THE BORROWER, REQUESTING ADDITIONAL DOCUMENTS WITHIN SEVEN DAYS (.4); CORRESPONDENCE TO N. CARLSON REQUESTING SAME (.3). | |
| | MICHELLE G. NOVICK | 0.70 hr. |
| 01/07/14 | PHONE CONFERENCE WITH JUDGE BUCKLO'S CLERK REGARDING PRESENTATION OF ORDER GRANTING LIMITED POSSESSION OF THE PROPERTY FOR PURPOSES OF CONDUCTING A PHASE I ENVIRONMENTAL AUDIT (.2); REVIEW TITLE REPORT FOR THE ADJACENT PROPERTY (.2); DRAFT EMAIL TO LUCIAN LUPASCU ████████████ (.2); REVIEW PLEADINGS AND PREPARE FOR THE 1-8-2013 COURT HEARING (.2). | |
| | DANIEL I. SCHLADE | 0.80 hr. |
| 01/07/14 | INTERNET RESEARCH TO OBTAIN REAL INFO REPORT FOR LAKE COUNTY PROPERTY, DELIVER SAME TO D. SCHLADE. REQUEST RECORDED DEED FROM TITLE COMPANY, REVIEW REPLY AND DELIVER SAME TO D. SCHLADE FOR COST APPROVAL, RECEIVE SAME AND FINALIZE REQUEST | |
| | SARAH D. RYCZEK | 0.40 hr. |

February 11, 2014

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL  60462

Invoice:  991527

Page 2

| | | |
|---|---|---|
| 01/07/14 | CORRESPONDENCE TO L. LUPASCU ENCLOSING ███████████ (.3); CONFERENCES WITH D. SCHLADE AND D. ARMIROS REGARDING ███ (.3). | |
| | MICHELLE G. NOVICK | 0.60 hr. |
| 01/08/14 | PREPARE FOR AND ATTEND COURT: ADVISE COURT OF DEALINGS BETWEEN THE PARTIES, AND OBTAIN LEAVE TO PRESENT ORDER GRANTING LIMITED POSSESSION OF THE PROPERTY FOR PURPOSES OF CONDUCTING A PHASE I AUDIT (1.9); DRAFT STATUS EMAIL TO LUCIAN LUPASCU REGARDING ███████████ (.2); DRAFT EMAIL TO OPPOSING COUNSEL REGARDING STATUS OF AGREEING TO ORDER GRANTING LIMITED POSSESSION FOR PURPOSES OF CONDUCTING A PHASE I AUDIT (.1). | |
| | DANIEL I. SCHLADE | 2.20 hr. |
| 01/08/14 | REVIEW EMAIL FROM TITLE COMPANY WITH DEED, REVIEW SAME AND LAND TRUST SUCCESSORSHIP WEBSITE, PREPARE FOLLOW UP EMAIL TO D. SCHLADE RE OWNERSHIP SHOWN AND L. MERCADO RE PAYMENT OF INVOICE. | |
| | SARAH D. RYCZEK | 0.30 hr. |
| 01/08/14 | CONFERENCE WITH D. SCHLADE REGARDING ███████████ | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 01/09/14 | PHONE CALL FROM COUNSEL FOR SUBURBAN IRON WORKS REGARDING ACCEPTANCE OF PROPOSED ORDER GRANTING LEAVE TO CONDUCT THE PHASE I ENVIRONMENTAL, AND POSSIBLE SALE OF THE PROPERTY (.2); DRAFT THREE EMAILS TO LUCIAN LUPASCU REGARDING ███████████ (.3); DRAFT EMAIL TO COUNSEL FOR SUBURBAN IRON WORKS REGARDING FIRSTMERIT'S CONDITIONAL ACCEPTANCE OF THE OFFER TO BUY THE SUBJECT PROPERTY (.2). | |
| | DANIEL I. SCHLADE | 0.70 hr. |
| 01/09/14 | CORRESPONDENCE TO AND FROM D. SCHLADE REGARDING ███████████ | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 01/13/14 | REVIEW EMAILS FROM M. NOVICK REGARDING ███████████ | |
| | DANIEL I. SCHLADE | 0.20 hr. |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

| | | |
|---|---|---|
| 01/13/14 | TELEPHONE CONFERENCE WITH N. CARLSON, COUNSEL FOR THE BORROWER, REGARDING ADDITIONAL INFORMATION RECEIVED AND STRATEGY WITH PAYING OF THE BANK (.2); REVIEW DOCUMENTS SENT BY N. CARLSON ALONG WITH CONTRACTS AND DOCUMENTS IN THE FILE IN PREPARATION FOR UPCOMING CONFERENCE CALL WITH L. LUPASCU TO DISCUSS STRATEGY (1.5); CORRESPONDENCE TO L. LUPASCU ▮▮▮▮▮▮▮▮▮▮ (.3); CORRESPONDENCE TO AND FROM D. SCHLADE ENCLOSING ▮▮▮▮▮▮▮▮▮▮ (.1). | |
| | MICHELLE G. NOVICK | 2.10 hr. |
| 01/14/14 | REVIEW DOCUMENTS RECEIVED FROM SUBURBAN AND M. HIVON IN PREPARATION FOR CONFERENCE CALL WITH L. LUPASCU REGARDING SAME (.5); PREPARE FOR AND PARTICIPATE IN CONFERENCE CALL WITH L. LUPASCU TO DISCUSS ▮▮▮▮▮▮▮▮▮▮ (.4). | |
| | MICHELLE G. NOVICK | 0.90 hr. |
| 01/16/14 | CORRESPONDENCE TO AND FROM D. SCHLADE ▮▮▮▮▮▮▮ (.1); TELEPHONE CONFERENCE WITH D. SCHLADE REGARDING ▮▮▮▮▮▮ (.1). | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 01/17/14 | TELEPHONE CONFERENCE WITH N. CARLSON REGARDING RECEIPT OF ADDITIONAL INFORMATION ON RECEIVABLES/PAYABLES (.3); CORRESPONDENCE TO AND FROM N. CARLSON REGARDING SAME (.2). | |
| | MICHELLE G. NOVICK | 0.50 hr. |
| 01/20/14 | CORRESPONDENCE TO AND FROM N. CARLSON REGARDING DELAY IN RECEIPT OF DOCUMENTS. | |
| | MICHELLE G. NOVICK | 0.20 hr. |
| 01/21/14 | CORRESPONDENCE TO N. CARLSON REGARDING RECEIPT OF DOCUMENTS. | |
| | MICHELLE G. NOVICK | 0.10 hr. |
| 01/22/14 | CORRESPONDENCE TO L. LUPASCU ▮▮▮▮▮▮▮ AND SCHEDULING A FOLLOW-UP CONFERENCE CALL TO DISCUSS SAME. | |
| | MICHELLE G. NOVICK | 0.30 hr. |
| 01/23/14 | CORRESPONDENCE TO AND FROM L. LUPASCU AND D. ARMIROS REGARDING ▮▮▮▮▮▮▮▮▮▮ | |
| | MICHELLE G. NOVICK | 0.10 hr. |
| 01/27/14 | CONFERENCE CALL WITH N. CARLSON REGARDING RECEIPT OF ADDITIONAL DOCUMENTS IN RESPONSE TO REQUEST AND PROPOSAL TO RESOLVE MATTERS WITH FIRSTMERIT (.3); CORRESPONDENCE TO L. LUPASCU REGARDING ▮▮▮▮ (.2). | |
| | MICHELLE G. NOVICK | 0.50 hr. |

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

February 11, 2014

Invoice: 991527

Page 4

| | | |
|---|---|---|
| 01/28/14 | TELEPHONE CONFERENCE CALL WITH CLIENT AND CO-COUNSEL REGARDING ██████████ ███████████ | |
| | KONSTANTINOS ARMIROS | 0.60 hr. |
| 01/28/14 | REVIEW DOCUMENTS RECEIVED FROM N. CARLSON (.5); CORRESPONDENCE TO AND FROM N. CARLSON REGARDING PROPOSED SETTLEMENT OFFER (.3); REVIEW SETTLEMENT OFFER AND RELATED DOCUMENTS IN PREPARATION FOR UPCOMING CONFERENCE CALL WITH L. LUPASCU (.2); CORRESPONDENCE TO L. LUPASCU ██████████████████(.2); PREPARE FOR AND PARTICIPATE IN CONFERENCE CALL WITH L. LUPASCU AND D. ARMIROS REGARDING ███████████████████(.7). | |
| | MICHELLE G. NOVICK | 1.90 hr. |
| 01/30/14 | FIRSTMERIT - SUBURBAN | |
| | REVIEW DOCUMENTS REQUESTED FOR DEBTOR'S EXAMINE (.3); CORRESPONDENCE TO AND FROM L. LUPASCU REGARDING ██████(.2); CORRESPONDENCE TO N. CARLSON, COUNSEL FOR THE DEBTOR, REQUESTING DOCUMENTS IN ORDER FOR THE BANK TO CONSIDER THE PROPOSED SETTLEMENT OFFER (.4) | |
| | MICHELLE G. NOVICK | 0.90 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 4.50 | 324.00 | 1,458.00 |
| KONSTANTINOS ARMIROS | 0.60 | 488.00 | 292.80 |
| MICHELLE G. NOVICK | 10.20 | 412.00 | 4,202.40 |
| SARAH D. RYCZEK | 0.70 | 208.00 | 145.60 |
| TOTAL | 16.00 | | $6,098.80 |

Total Fees for Professional Services ................................................... 6,098.80

## REIMBURSABLE COSTS

CHICAGO TITLE INSURANCE COMPANY: OWNERSHIP SERACH RE;    75.00
FIRSTMERIT BANK/ SUBURBAN IRON WORKS LOAN 1/07/14

Total Reimbursable Costs ..........................................    75.00

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

Discount                                                        ($740.86)

## TOTALS FOR THIS MATTER

Prior Balance Brought Forward ............................................................................. $4,382.18

Fees For Professional Services ........................................................ 6,098.80

Reimbursable Costs .......................................................................... 75.00

Less Credits and Adjustments ........................................................ (740.86)

NET CURRENT BILLING FOR THIS MATTER ........................................... $5,432.94

**TOTAL DUE FOR THIS MATTER** ................................................................. **$9,815.12**

EIN: 36-2041272

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

March 13, 2014

Invoice: 994876

Page 1

BHB

**Our Matter #  39671-0004**       **SUBURBAN IRON WORKS LOAN LEGACY  MIDWEST BANK #702338500001/FDIC #10236002978**

FOR PROFESSIONAL SERVICES RENDERED THROUGH February 28, 2014

| | | |
|---|---|---|
| 02/03/14 | CORRESPONDENCE TO AND FROM N. CARLSON, COUNSEL FOR SUBURBAN, INQUIRING AS TO TIMING TO RECEIVE DOCUMENTS AND DATE OF SCHEDULED CLOSING (.3); CORRESPONDENCE TO L. LUPASCU ADVISING ████ (.1). | |
| | MICHELLE G. NOVICK | 0.40 hr. |
| 02/10/14 | CORRESPONDENCE TO AND FROM N. CARLSON, COUNSEL FOR SUBURBAN, REGARDING RECEIPT OF REQUESTED DOCUMENTS (.2); CORRESPONDENCE TO AND FROM L. LUPASCU ADVISING ████ (.1). | |
| | MICHELLE G. NOVICK | 0.30 hr. |
| 02/12/14 | CORRESPONDENCE TO L. LUPASCU ████████████ (.2); CORRESPONDENCE TO AND FROM N. CARLSON REGARDING WHEREABOUTS OF DOCUMENTS TO BE PRODUCED (.2). | |
| | MICHELLE G. NOVICK | 0.40 hr. |
| 02/13/14 | REVIEW DOCUMENTS RECEIVED FROM SUBURBAN IRON WORKS (.7); CORRESPONDENCE TO L. LUPASCU ENCLOSING SAME (.1). | |
| | MICHELLE G. NOVICK | 0.80 hr. |
| 02/17/14 | REVIEW DOCUMENTS PRODUCED BY M. HIVON (1.3); CORRESPONDENCE TO AND FROM L. LUPASCU TO ████████ (.1). | |
| | MICHELLE G. NOVICK | 1.40 hr. |
| 02/25/14 | PHONE CONFERENCE WITH M. NOVICK REGARDING ████████ (.1); PHONE CALL TO COUNSEL FOR BORROWER REGARDING STATUS OF THE SALE OF THE PROPERTY (.2); DRAFT CORRESPONDENCE TO LUCIAN LUPASCU REGARDING ████████ (.2); DRAFTING MOTION FOR SUMMARY JUDGMENT (3.1). | |
| | DANIEL I. SCHLADE | 3.60 hr. |

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

| | | |
|---|---|---|
| 02/25/14 | REVIEW ADDITIONAL DOCUMENTS RECEIVED FROM M. HIVON IN PREPARATION FOR UPCOMING CONFERENCE CALL WITH L. LUPASCU (.3); PREPARE FOR AND PARTICIPATE IN CONFERENCE CALL WITH L. LUPASCU REGARDING ██████ (.5); TELEPHONE CONFERENCES WITH N. CARLSON REGARDING STATUS OF SALE OF REAL ESTATE AND SCHEDULING DEBTOR EXAMINATION (.3); CONFERENCE WITH D. SCHLADE REGARDING ██████ (.2). | |
| | MICHELLE G. NOVICK | 1.30 hr. |
| 02/26/14 | REVISING THE MOTION FOR SUMMARY JUDGMENT (.4); DRAFTING THE AFFIDAVIT OF PROOF TO BE EXECUTED BY LUCIAN LUPASCU (1.6); PHONE CONFERENCE WITH LUCIAN LUPASCU REGARDING ██████ (.1); EDIT AND REVISE THE AFFIDAVIT OF PROOF (.4); PHONE CALL TO THE TITLE COMPANY REGARDING UPDATING THE MINUTES OF FORECLOSURE (.2). | |
| | DANIEL I. SCHLADE | 2.70 hr. |
| 02/27/14 | REVIEW CORRESPONDENCE FROM M. NOVICK WITH ██████ AND DRAFT RESPONSE EMAIL WITH COMMENTS REGARDING ██████ (.2); DRAFT TWO EMAILS TO LUCIAN LUPASCU REGARDING ██████ (.2). | |
| | DANIEL I. SCHLADE | 0.40 hr. |
| 02/27/14 | CONFERENCES WITH D. SCHLADE REGARDING ██████ (.3); TELEPHONE CONFERENCES WITH N. CARLSON REGARDING STATUS OF CLOSING AND CONFIRMING DEBTOR'S EXAMINATION (.2); CORRESPONDENCE TO AND FROM D. SCHLADE REGARDING ███ (.1). | |
| | MICHELLE G. NOVICK | 0.60 hr. |
| 02/28/14 | CORRESPONDENCE TO L. LUPASCU CONFIRMING ██████ (.2); CORRESPONDENCE TO N. CARLSON REQUESTING ADDITIONAL DOCUMENTS (.2). | |
| | MICHELLE G. NOVICK | 0.40 hr. |

## SUMMARY OF FEES

| | Hours | Rate/Hr | Amount |
|---|---|---|---|
| DANIEL I. SCHLADE | 6.70 | 324.00 | 2,170.80 |
| MICHELLE G. NOVICK | 5.60 | 412.00 | 2,307.20 |
| TOTAL | 12.30 | | $4,478.00 |

# ARNSTEIN & LEHR LLP

120 S. RIVERSIDE PLAZA - SUITE 1200

CHICAGO, ILLINOIS 60606-3910

(312) 876-7100

FIRSTMERIT BANK
ATTN: MARY LEJA
14701 S. LAGRANGE RD.
ORLAND PARK IL 60462

March 13, 2014

Invoice: 994876

Page 3

Total Fees for Professional Services .................................................. 4,478.00

Discount ($537.36)

## TOTALS FOR THIS MATTER

Prior Balance Brought Forward ............................................................................... $9,815.12

Fees For Professional Services ........................................................ 4,478.00

Reimbursable Costs ......................................................................... 0.00

Less Credits and Adjustments ........................................................... (537.36)

NET CURRENT BILLING FOR THIS MATTER ........................................... $3,940.64

**TOTAL DUE FOR THIS MATTER** .............................................................. **$13,755.76**

EIN: 36-2041272

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-6047 |
| | ) | |
| SUBURBAN IRON WORKS, INC. and | ) | Honorable Elaine E. Bucklo |
| MARK J. HIVON, | ) | |
| Defendants. | ) | |

## JUDGMENT OF FORECLOSURE AND SALE

THIS CAUSE being heard on the Motion of Plaintiff for entry of an order of summary judgment against all defendants and entry of Judgment of Foreclosure and Sale (the "Judgment"), the Court having entered an order of summary judgment against Suburban Iron Works, Inc. and Mark J. Hivon, and this court finding that the right, title and interest of plaintiff FirstMerit Bank, N.A. is prior paramount and superior to any of said defendants right title and interest in the mortgaged real estate commonly known as: 27W942 Industrial Ave., Barrington, Illinois 60010 (hereinafter referred to for convenience as the "Property"):

THE COURT HAVING FOUND AND ORDERED: that this court has diversity jurisdiction over the matter and parties pursuant to 28 USC § 1332 and 28 USC § 1348; that due notice has been served on all defendants; that Defendants appeared through counsel of record in this matter and have otherwise submitted to the jurisdiction of this court; that an Affidavit of Proof in support of the Judgment, which complies with Illinois Supreme Court Rule 113, has been filed; that a Loss Mitigation Affidavit pursuant to Illinois Supreme Court Rule 114 has been filed; and it further appearing to this Court that plaintiff FirstMerit is the current holder of the subject Mortgage relating to the Property, and this Court being otherwise fully advised, finds:

1.      This Court has jurisdiction over the parties to and the subject matter of this lawsuit.

2.      All the material allegations of the Complaint in the above captioned matter (the "Complaint") are true and proven.

3.      By virtue of the note and mortgage, including all assignments, as alleged and described in the Complaint (hereinafter referred to for convenience as the "Note" and the "Mortgage") and as established by the Affidavit of Proof there is due to the Plaintiff, and it has a valid and subsisting lien upon the Property as follows:

    (a)     For costs and expenses:

| | | |
|---|---|---|
| Clerk of the Court: | $ | 400.00 |
| Recorder of Deeds for Lis Pendens: | $ | 48.00 |
| Title charges: | $ | 625.00 |
| Sheriff Service Fees: | $ | 0.00 |
| Process Server Fees: | $ | 0.00 |
| Publication Charges: | $ | 0.00 |
| Attorneys' Fees and costs (to 2/28/14) | $ | 34,567.54 |
| **Subtotal:** | $ | 35,640.54 |

    (b)     For the use and benefit of the Plaintiff, as owner and holder of the Articles of Agreement Installment Contract, but subject and subordinate to the lien for the payment of the items mentioned in subparagraph (a) of this paragraph 3:

| | | |
|---|---|---|
| Principal Balance: | $ | 810,000.00 |
| Accrued Interest Though 3/26/14: | $ | 250,826.04 |
| Late Fees: | $ | 14,043.78 |
| **Subtotal:** | $ | 1,0748,69.82 |

**Total (a) & (b): $1,110,510.36**

(c)   For such advances made in order to protect the lien of the Judgment and preserve the Property, such as, but not limited to property inspections, real estate taxes or assessments, property maintenance, and insurance premiums incurred by the Plaintiff prior to the sheriff or other court-appointed selling officer's sale.  Such items expended shall become an additional indebtedness secured by the judgment lien and bear interest from date of advance at the 10021 installment contract rate.

| | | |
|---|---|---|
| Insurance (force places and flood): | $ | 0.00 |
| Appraisal Fee: | $ | 5,040.00 |
| Survey Fee: | $ | 0.00 |
| Receiver Fees: | $ | 0.00 |
| Real Estate Taxes: | $ | 0.00 |
| Total: | $ | 5,040.00 |

(d)   The total amount due (i.e. the sum of subparagraphs (a), (b) and (c)) pursuant to the Complaint is the sum of **$ 1,115,550.36**.

(e)   This Court has reviewed the foregoing attorneys' fees and costs, finds that they were incurred in connection with the prosecution of this suit; that they are fair, reasonable, and customary; and that same are approved and allowed; that this Court has reviewed the advances for certain costs of this foreclosure including, but not limited to filing fees, stenographer's fees, sheriff or other court-appointed selling officer's costs, recorder costs, witness fees, costs of publication, photocopying and postage costs, costs of procuring and preparing documentary evidence and the costs of abstracts of title,

foreclosure minutes and a title insurance policy; that they are fair, reasonable and customary; that they are approved and allowed.

4.     **SUBORDINATE LIENS AND INTERESTS:** (a) The Court further finds that there is due and owing to the Defendants immediately hereinafter stated, if any, the sums set forth, as a lien(s) upon the subject premises subordinate and inferior to the lien and interest of the Plaintiff pursuant to the verified pleadings filed herein: No junior lien claimants have appeared in this foreclosure, and thus the section is not applicable.

5.     The rights and interest of all Defendants in and to the Property are inferior to the lien of Plaintiff identified in paragraph 3 of this Judgment.  The Mortgage constitutes a valid lien upon the Property which is a prior, paramount and superior lien in and to the Property. Upon entry of the Judgment, all rights of the Plaintiff shall be secured by a lien upon the Property, which lien shall have the same priority as the Mortgage to which the Judgment relates.  This judgment lien is prior, paramount, and superior to the right, title, interest, claim, or lien of any other party to this foreclosure action.  The interest of any and all parties to this foreclosure in and to the Property are terminated by this foreclosure and judgment.

6.     The following parties' rights to possession of the Property are hereby terminated by this foreclosure after the confirmation of a foreclosure sale: Suburban Iron Works, Inc. and Mark J. Hivon.

7.     The Mortgage hereby foreclosed is identified as follows:

a.     the Mortgage dated May 17, 2009, and recorded as Doc. No. 6489843 on June 24, 2009 with the Lake County, Illinois Recorder of Deeds ("Mortgage"), which mortgage is secured with the property commonly known as 27W942 Industrial Ave., Barrington, Illinois 60010 (the "Property"), which Mortgage was assigned to FirstMerit by virtue of the Assignment of Loan Documents dated August 19, 2013 and executed by the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company in favor of FirstMerit Bank, N.A.; as well as the

Assignment of Mortgage dated February 4, 2011, and recorded with the Lake County, Illinois Recorder of Deeds as Document No. 6706019 on February 14, 2011.

the Property directed to be sold is described as follows:

THE EAST HALF OF LOT 8 IN LAKE BARRINGTON INDUSTRIAL SUBDIVISION, UNIT NO. 1, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 21, AND PART OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 22, TOWNSHIP 43 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF, RECORDED DECEMBER 13, 1966, AS DOCUMENT 1324625, IN BOOK 44 OF PLATS, PAGE 15, AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED FEBRUARY 3, 1967, AS DOCUMENT 1328448, IN LAKE COUNTY, ILLINOIS.

Commonly known as: 27W942 Industrial Ave., Barrington, Illinois 60010

Tax Parcel Number:   13-22-301-003-0000

8.      The Court further finds that Suburban Iron Works, Inc. and Mark J. Hivon were each properly served with process in this matter; that Suburban Iron Works, Inc. and Mark J. Hivon appeared in this matter through counsel of record; and that summary judgment has been properly entered  against Suburban Iron Works, Inc. and Mark J. Hivon.

9.      The Property is commercial property, and not residential property as defined in 735 ILCS 5/15-1219.

10.     Defendant Suburban Iron Works, Inc. has duly and properly waived the right of redemption pursuant to the Mortgage, p. 11, "Waiver of Right of Redemption."

**IT IS THEREFORE FURTHER ORDERED:**

11.     Unless within the time allowed by law, the Defendants pay to the Plaintiff the amounts set forth in paragraph 3(a), 3(b), 3(c), and 3(d), of this Judgment with interest thereon or that if the Property is not redeemed within the time allowed by law and as prescribed by 735 ILCS 5/15-1602, the Property with all improvements, fixtures, and appurtenances thereto, or so

much of the Property which may be divisible and sold separately without material injury to the parties in interest, shall be sold at public auction to the highest bidder for cash by the Sheriff of Cook County, Illinois or such other court-appointed selling officer, at a place to be selected by that person.

12.    During the period prior to foreclosure sale, Plaintiff is authorized to incur and pay reasonable expenses for the purposes of paying taxes, special assessments, insurance premiums, costs of repairing or maintaining the Property necessary for the proper preservation of the Property.  Attorneys' fees and expenses to the extent that attorney's fees and expenses are not included in paragraph 3 of the Judgment shall become so much additional indebtedness due to Plaintiff and that upon the filing of appropriate Affidavits with respect to the expenses shall be included in the amount required to redeem pursuant to statute and shall be included in the amount that Plaintiff may bid at the foreclosure sale.

13.    The sheriff, or other court-appointed selling officer, is appointed to execute the Judgment and shall give public notice of the time, place, and terms of such sale by publishing same once in each week for three (3) consecutive calendar weeks (Sunday through Saturday,) the first such notice to be not more than forty-five (45) days prior to the sale and the last such notice to be published not less than ten (10) business days prior to the sale; The notice shall be by an advertisement in a newspaper circulated to the general public in the county in which the Property is located, in the section where legal notices are commonly placed and by a separate advertisement, which may be in the same newspaper, in the section where real estate, other than real estate being sold in a legal proceeding, is commonly advertised to the public; provided that where the newspaper does not have separate legal and real estate sections, a single advertisement shall be sufficient.

14.     The sale may be continued in the discretion of the party conducting it; however, no additional notice need be given if the date to which sale is continued is less than sixty days after the last scheduled sale date.

15.     Plaintiff or any of the parties herein, may become the purchaser at the sale.  If Plaintiff is the successful bidder at the sale, the amount due the Plaintiff, plus all costs, advances and fees hereunder, shall be taken as a credit on its bid.

16.     The sheriff or other court-appointed selling officer, upon making the sale, shall immediately execute and deliver to the purchaser a certificate of sale and with all convenient speed, take receipts from the respective parties to whom he may have made payment, and file a report of sale and distribution with the Court for its approval and confirmation; the sheriff, or other court-appointed selling officer, shall include in the report of sale a breakdown of the distribution of the sale proceeds; that out of the proceeds of sale, distribution shall be made in the following order of priority:

(a)     To the sheriff, or other court-appointed selling officer, for his fees, disbursements and commission on such sale;

(b)     The reasonable expenses for securing possession before, holding, maintaining and preparing the real estate for sale, including payment of real estate taxes and other governmental charges, insurance premiums, receiver's and management fees, attorneys fees, payments made pursuant to section 15-1505 of the Illinois Code of Civil Procedure (735 ILCS 5/15-1505) and expenses incurred by the Plaintiff pursuant to statute or as by the mortgage as provided.

(c)     To the Plaintiff or its attorney of record, the amounts found to be due to Plaintiff in this Judgment.

17.     If after payment of the above items there shall be a remainder, the sheriff, or other court-appointed selling officer, shall hold this surplus subject to the further order of this Court. If there are insufficient funds to pay in full the amounts found due herein, the sheriff, or other court-appointed selling officer, shall specify the amount of this deficiency in the report of sale; that Plaintiff shall be entitled to a judgment in personam for the amount of such deficiency against Suburban Iron Works and Mark J. Hivon, jointly and severally.

18.     Upon confirmation of the sale, the party conducting the sale shall execute and deliver to the holder of the Certificate of Sale a deed sufficient to convey title; the conveyance shall be an entire bar to claims of the persons claiming thereunder; that thereupon, the grantee in such deed, or legal representative or assigns, be let into possession of the Property and in default of so doing, an order for possession shall issue.

19.     The following parties' rights to possession of the Property shall be terminated after confirmation of a foreclosure sale: Suburban Iron Works, Inc. and Mark J. Hivon.

20.     The court hereby retains jurisdiction of the subject matter of this cause and of all the parties hereto for the purpose of enforcing this Judgment and appointing or continuing a receiver herein at any time during the period of redemption.

21.     Plaintiff shall mail a copy of this order to mortgagors at their last known address within seven (7) days of entry

Dated: _____

Entered: _____

Prepared By:
Daniel I. Schlade (ARDC No. 6273008)
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606-3913
312-876-7100